PAUL A. REYNOLDS (Bar No. 179656)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*pro hac vice to be filed*)
PETER M. ELLIS (*pro hac vice to be filed*)
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60610
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Plaintiff
**Mail Boxes Etc., Inc.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAIL BOXES ETC., INC.,**<br>**Plaintiff,**<br>**v.**<br>**STUPS, INC. and STUART BERK,**<br>**Defendants.** | Case No. 3:08-CV-00491-JAH-POR<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br>Date: To Be Determined<br>Time: To Be Determined<br>Judge: Hon. John A. Houston<br>Place: Courtroom 11<br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**STATEMENT OF FACTS** .......... **2**

**ARGUMENT** .......... **7**

I. MBE IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ON ITS LANHAM ACT CLAIMS .......... 7

A. MBE Has A Strong Probability Of Success On The Merits .......... 8

*1. MBE Has Valid And Protectible Trademarks .......... 8*

*2. Stups' Continued use Of The MBE Marks Is Likely To Confuse Consumers .......... 10*

B. MBE Will Suffer Irreparable Harm If The Requested Temporary Restraining Order Is Not Granted And There Is No Adequate Legal Remedy .......... 11

C. The Balance of Hardships Tips Sharply In MBE's Favor .......... 12

D. Granting A Temporary Restraining Order In Favor Of MBE Advances The Public Interest .......... 14

**CONCLUSION** .......... **15**

# TABLE OF AUTHORITIES

## CASES


*Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984) ................11, 12

*Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966 (9th Cir. 2007) ...........................9, 10

*Baskin-Robbins, Inc. v. Taj Cal., Inc.*, No. 01-cv-09971, 2003 U.S. Dist. LEXIS 19946 (C.D. Cal. Oct. 8, 2003)....................................................................10

*Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co.*, 576 F. Supp. 1055 (E.D.N.Y. 1983)........................................................................................10

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999)........................................................................................11

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ..................................13

*Cadence Design Sys. Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997)........................13

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988)..........................7

*Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.*, No. 07-cv-1455, 2007 U.S. Dist. LEXIS 34108 (E.D.N.Y. May 9, 2007) ......................................11

*Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38 (2d Cir. 1986) ...........7, 12, 14

*Days Inns Worldwide, Inc. v. Patel*, No. 04-2259, 2005 U.S. Dist. LEXIS 43234 (S.D. Cal. Feb. 8, 2005) ..........................................................................10

*Dunkin' Donuts Inc. v. Northern Queens Baker, Inc.*, 216 F. Supp. 2d 31 (E.D.N.Y. 2001)........................................................................................11

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977).........................................................................................13

*Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk*, 938 F. Supp. 612 (C.D. Cal. 1996)..................................................................................12

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005)..........................................................................................8

*Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) .......................13

*Lozano Enters. v. LA Opinion Publishing Co.*, No. 96-cv-5969, 1997 U.S. Dist. LEXIS 20372 (C.D. Cal. July 30, 1997) ....................................................11

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Indus. Ass'n*, 929 F. Supp. 473 (D.D.C. 1996).................................................................13

*Nichols v. Deutsche Bank Nat'l Trust Co.*, No. 07-cv-2039, 2007 U.S. Dist. LEXIS 86223 (S.D. Cal. Nov. 21, 2007)..........................................................7

*Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009 (C.D. Cal. 1996)..................10, 12, 14

*Phillip Morris Inc. v. Allen Distribs.*, 48 F. Supp. 2d 844 (S.D. Ind. 1999)....................13

*Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004)....................14

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986)....................13

*Precision Door Serv. v. Bell*, No. C 02-01108, 2002 U.S. Dist. LEXIS 7429 (N.D. Cal. Apr. 18, 2002)....................11

*Printers Servs. Co. v. Bondurant*, No. 91-cv-0916, 1991 U.S. Dist. LEXIS 20561 (C.D. Cal. Apr. 18, 1991)....................10, 14

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)....................7

*Resource Leaders, Inc. v. Source Solutions, Inc.*, 404 F. Supp. 2d 1232 (E.D. Cal. 2005)....................12, 14

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)....................12

*Tillamook County v. U.S. Army Corps. of Engineers*, 288 F.3d 1140 (9th Cir. 2002)....................7

*United Parcel Service of America, Inc. v. Package America, Inc.*, No. 96-cv-01252, 1996 U.S. Dist. LEXIS 8148 (N.D. Cal. May 9, 1996)....................8, 9

*Wrobel v. S.L. Pope & Assocs.*, No. 07-cv-1591, 2007 U.S. Dist. LEXIS 59779 (S.D. Cal. Aug. 15, 2007)....................7

## STATUTES

15 U.S.C. § 1065....................9

15 U.S.C. § 1114(1)....................8

15 U.S.C. § 1115(a)....................8

15 U.S.C. § 1125(a)....................8

15 U.S.C. § 1125(c)....................8

## TREATISE

3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23.3 (4th ed. 2002)....................11

3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 25.07[1] (4th ed. 2002)....................11

## INTRODUCTION

In this action for the entry of a temporary restraining order, Plaintiff Mail Boxes Etc., Inc. ("MBE") seeks to temporarily restrain Defendants Stups, Inc. and Stuart Berk's (collectively, "Stups" or "Defendants") unlawful misuse of certain proprietary MBE trade names and marks and breach of their post-termination obligations. Stups is a former MBE franchisee, whose franchise agreement granted a limited license to use the MBE trademarks and service marks, including "The UPS Store®" mark, during the term of the franchise agreement. Pursuant to that agreement, Stups received, *inter alia*, the benefits of MBE's extensive advertising, a package of services intended to teach Stups how to establish and operate the business and an exclusive territory. In exchange for all these benefits during the ten (10) year term of the agreement, Stups agreed to certain post-termination covenants, including obligations to de-identify the former franchised center as a "The UPS Store®", to cease and desist from any and all use of MBE's trade names and marks and to return all confidential and proprietary information to MBE.

On March 14, 2008, MBE terminated the franchise agreement effective March 15, 2008 at 5:00 pm EST, because Berk, the owner of Stups, had made terrorist threats against MBE and United Parcel Service ("UPS"). Specifically, on February 26, 2008, in a telephone call with a UPS customer service representative, Berk threatened to "blow up" a UPS Customer Center in Nassau, New York. On the same day, Berk threatened the MBE District Consultant for his region: "I'm going my way and hopefully there won't be a major body count. Give me a call cause as it was said in *First Blood*, it's not over until I say it's over." Despite the unequivocal termination of Defendants' franchise rights in the face of Berk's threats to visit physical and personal harm upon MBE and UPS, Defendants have continued to operate from their former franchised location as if it were an authorized MBE franchise. They have continued to conduct business under the MBE trademark, "The UPS Store®" and, without MBE's authorization or

consent, have held the location out to the consuming public as a "The UPS Store®" franchise. In order to protect MBE's goodwill, as well as the public from the inevitable confusion occasioned by Defendants' infringement upon MBE's trademarks, MBE respectfully requests that Defendants be temporarily restrained from using MBE's trademarks and service marks pending further order of Court.

## STATEMENT OF FACTS

MBE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6060 Cornerstone Court West, San Diego, California. MBE is the world's largest franchisor of independently owned and operated postal, packaging, business and communication retail service centers, under the Mail Boxes Etc.® and The UPS Store® marks, with more than 800,000 mailbox holders in the United States and thousands of locations worldwide, offering mail and parcel receiving, packaging and shipping services and providing small businesses with a wide range of products and services across the United States and throughout the world. (Verified Complaint ¶ 2; Don Higginson Aff. ¶ 3.)

Since it was founded in 1980, MBE has continuously conducted its business by franchising a standard, unique and uniform system for conducting the postal, business, and communications centers. (Verified Complaint ¶ 7; Higginson Aff. ¶¶ 3, 5-6.) Throughout its existence, MBE has offered and provided services including: mailbox services with 24 hour access; copy services; binding and laminating services; specialty paper services; fax services; postal services; parcel shipping; freight shipping; packaging services; sale of shipping, packaging, mailing supplies and office supplies; printing services; notary services; passport photograph services; computer time rental; online services; among other services. These businesses are identified and promoted to the general public under the trademark, service marks and trade

names MAIL BOXES ETC., MBE MAIL BOXES ETC., and The UPS Store® (collectively referred to herein sometimes as "MBE Marks"). (Verified Complaint ¶ 7; Higginson Aff. ¶ 5.)

MBE grants franchises to qualified persons to own and operate franchise centers at specific locations and licenses authorized franchisees to use MBE's proprietary trade names, trade and service marks, logos, know-how and expertise within an exclusive territory designated in the franchise agreement. (Verified Complaint ¶ 8; Higginson Aff. ¶ 12.) MBE provides its franchisees with proprietary property, equipment and information, including its MBE operating manuals, for use exclusively in connection with the operation of a franchised Mail Boxes Etc.® or The UPS Store® Center. (Verified Complaint ¶ 9; Higginson Aff. ¶ 16). MBE franchise centers are operated *via* uniform format, signs, equipment, layout, systems, methods, procedures and designs, offer uniform products, and utilize certain trademarks, service marks, trade dress and other commercial symbols, including "THE UPS STORE®." (Verified Complaint ¶ 10; Higginson Aff. ¶¶ 8-14.)

With thousands of Mail Boxes Etc.® and The UPS Store® franchisees nationwide, MBE is the predominant leader in this industry. (Verified Complaint ¶ 11; Higginson Aff. ¶ 6.) Through nearly thirty years of experience, MBE has developed unique, proprietary business knowledge upon which the franchisee business model is specifically formulated. (Verified Complaint ¶ 11; Higginson Aff. ¶¶ 6, 10-11.) This information is shared with MBE's carefully selected franchisees through training and continuous business support, and provides the foundation upon which MBE franchisees successfully operate postal, business and communications centers in markets throughout the United States and abroad. (Verified Complaint ¶ 11; Higginson Aff. ¶6.) MBE's business formula is based on its proven system of location, reliability and convenience. (Higginson Aff. ¶ 19.) Over time, substantial customer goodwill and brand awareness builds in association with each MBE center selling MBE products and providing MBE services based

primarily upon the specific location of that center. (Verified Complaint ¶ 12; Higginson Aff. ¶ 19.)

The operation of a store substantially similar to a "The UPS Store®" branded franchise -- using the same products, services and means of doing business in surroundings that look in all material respects the same as an authorized "The UPS Store®" business center -- will create customer confusion about the identity of the center. (Verified Complaint ¶ 13; Higginson Aff ¶ 20.) Furthermore, MBE suffers dilution of its brand, image and goodwill when a former franchise continues to operate as an independent business under "The UPS Store®" trade name while no longer having to satisfy MBE's high standards of service and quality. (Id.) So long as the former franchisee continues to operate the business from the same location, MBE has no opportunity to re-franchise the location and territory to another franchisee. (Verified Complaint ¶ 14; Higginson Aff. ¶¶ 22-23.)

On July 25, 2005, Stups entered into a written franchise agreement with MBE, pursuant to which Stups was granted a franchise to operate a The UPS Store® branded center ("Center 5603") at 1936 Hempstead Turnpike, East Meadow, New York (the "Agreement"). (Verified Complaint ¶ 15; Kaufman Aff. ¶3.) (A true and correct copy of the Agreement is attached as Exhibit A to the Higginson Affidavit.) On or about July 6, 2005, Berk also executed a Continuing Personal Guarantee for Center 5603 by which he personally guaranteed the performance of Stups' obligations as the franchisee under the Agreement. (Verified Complaint ¶ 16.) (A true and correct copy of the Continuing Personal Guarantee is attached hereto as Exhibit 1.)

The Agreement is very clear that MBE controls Berks' right to use the MBE Marks. In the Agreement, MBE reserves the right to control the uses of the MBE Marks, and Stups cannot infringe upon, harm or contest MBE's rights to the MBE Marks in any way. (Verified Complaint ¶ 20; Agreement ¶ 6.) The Agreement further provides that the goodwill arising from the MBE

Marks belongs to MBE and shall revert back to MBE if the Agreement is terminated for any reason. (Verified Complaint ¶ 21; Agreement ¶ 6.) Upon such termination, the Agreement requires Stups to, *inter alia*, change its business name and delete any reference in its business name to the MBE Marks, cease to use the MBE System and MBE Marks in any form and cease to hold itself out as a franchisee of MBE. (Verified Complaint ¶¶ 21, 29; Agreement ¶¶ 6, 14.1.a.)

In 2006, Berk exhibited erratic behavior in the form of abusive and profanity-laced tirades in his communications with MBE and UPS personnel. (Verified Complaint ¶¶ 32-33). For example, in or about mid-2007, Berk made the following hostile and vulgar statements in a voicemail to MBE's District Consultant: "Fu** Crawford, fu** UPS, fu** MBE – all you scumbags want to do is steal my fu**ing money. ... So all of you assh**les that are out there je**kng off someone better be in touch with me cause I've fu**ing had it." (Verified Complaint ¶ 34; Kaufman Aff. ¶ 5.) In another voicemail during the same timeframe, Berk proclaimed brashly: "I don't need people je**king off in New Jersey at some meetings .... You know Nero fiddled while Rome burned. Get somebody to come into my store and do this other bullsh** work. I'm not fu**ing doing it anymore." (Id.)

By early 2008, Berk's vulgarity had escalated to include specific threats of bodily harm and property damage to MBE and UPS. (Verified Complaint ¶ 35.) On February 26, 2008, in a call to a UPS customer service representative, Berk threatened to "blow up" the Nassau, New York UPS Customer Center for its purported failure to commit sufficient resources to locate a lost package. (Verified Complaint ¶ 35, Chatman Aff. ¶¶ 3-6; Hernandez Aff. ¶¶ 3-4.) Later that same day, Berk left an overtly hostile voicemail for the MBE District Consultant: "I just got a call from UPS security and they're making statements of false accusations so now I know I'm dealing with thieves and liars and stupid morons. ... I'm not playing anymore. I'm going my way and

hopefully there won't be a major body count. Give me a call cause as it was said in *First Blood*, it's not over until I say it's over." (Verified Complaint ¶ 37; Kaufman Aff. ¶ 6.)

In light of Berk's history of erratic and bullying behavior toward MBE and UPS personnel, culminating in outrageous and reckless terrorist threats of physical and personal violence, MBE reported Berk's menacing statements to New York law enforcement officials and decided to terminate the Agreement. (Verified Complaint ¶ 38; Hernandez Aff. ¶ 5.) On March 13, 2008 at 9:30 a.m., MBE, through its security personnel, hand delivered to Berk a Notice of Material Default and Termination of Franchise Agreement for The UPS Store Center #5603 ("Notice of Termination"). (Verified Complaint ¶ 39; Higginson Aff. ¶ 24; Hernandez Aff. ¶ 6.) (A true and correct copy of the Notice of Termination is attached as Exhibit B to the Higginson Affidavit.) The Notice of Termination advised defendants that the franchise for Center #5603 would terminate on March 14, 2008 at 5:00 p.m. EST, unless defendants agreed to pursue a sale of the franchise upon certain conditions acceptable to MBE. (Id.) Defendants rejected that opportunity and the termination became effective as stated in the Notice of Termination. (Verified Complaint ¶¶ 39-40; Higginson Aff. ¶¶ 25-27; Kaufman Aff. ¶ 7.)

Despite the termination of the Agreement, Stups has continued to operate its business as if it were an authorized "The UPS Store®" franchise center in blatant violation of the Agreement's post-termination obligations. (Verified Complaint ¶ 41.) In fact, on March 15, 2008, one day after MBE terminated Stups' franchise rights, Stups continued to operate under "The UPS Store®" moniker from the very same location. (Kaufman Aff. ¶¶ 8-9.)

Defendants' continued use of the MBE Marks violates both the post-termination obligations in the Agreement and federal trademark law. (Verified Complaint ¶¶ 42, 47-61.) Indeed, Stups' operation of the formerly franchised center under "The UPS Store®" trade name is intended to confuse, and will confuse, consumers into believing that the business is still a

licensed The UPS Store® center. (Verified Complaint ¶ 45; Higginson Aff. ¶¶ 20-23.) Stups' continued use of the MBE Marks in connection with the former franchised location has and continues to damage MBE's Marks and goodwill. (Verified Complaint ¶ 46; Higginson Aff. ¶¶ 20-23.)

## ARGUMENT

### I. MBE IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ON ITS LANHAM ACT CLAIMS.

Courts generally issue preliminary injunctive relief in trademark infringement cases. Church of Scientology Int'l v. Elmira Mission, 794 F.2d 38, 41 (2d Cir. 1986). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988).

An applicant for a temporary restraining order must meet the same standards applicable to the issuance of a preliminary injunction. Wrobel v. S.L. Pope & Assocs., No. 07-cv-1591, 2007 U.S. Dist. LEXIS 59779, at *2 (S.D. Cal. Aug. 15, 2007). The moving party must show either: "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 602 (9th Cir. 1991); Nichols v. Deutsche Bank Nat'l Trust Co., No. 07-cv-2039, 2007 U.S. Dist. LEXIS 86223, at *4 (S.D. Cal. Nov. 21, 2007). These two tests represent two points on a sliding scale in which the required probability of success decreases as the degree of irreparable harm increases. See Tillamook County v. U.S. Army Corps. of Engineers, 288 F.3d 1140, 1143 (9th Cir. 2002); Nichols, 2007 U.S. Dist. LEXIS 86223 at *4. Here, Defendants' unauthorized use of the MBE Marks constitutes a blatant violation of the Lanham Act. And an injunction in the form of a temporary restraining order must issue to protect MBE's valuable interests in such marks.

**A. MBE Has A Strong Probability Of Success On The Merits.**

In the Verified Complaint, MBE has alleged claims for trademark infringement in violation of sections 32, 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c). In order to prevail on such claims, MBE must establish that: (1) the Marks are owned by it and are valid and legally protectible; and (2) the defendants use of the Marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 601 (9th Cir. 2005); United Parcel Service of America, Inc. v. Package America, Inc., No. 96-cv-01252, 1996 U.S. Dist. LEXIS 8148, at *5 (N.D. Cal. May 9, 1996). In this case, it is virtually indisputable that the MBE Marks are valid, that Stups is infringing on those Marks, and that the infringement will result in customer confusion.

***1. MBE Has Valid And Protectible Trademarks.***

The federal registration of a trademark with the United States Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115(a). UPS is the owner of the following trademarks, to which it has granted an exclusive license to MBE, on the Principal Register of the United States Patent and Trademark Office:

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 2,884,954 | THE UPS STORE | Principal | Sept. 14, 2004 | 9, 35, 38, 39 |
| 76/442,507 | UPS STORE | Principal | Pending | 9 |
| 76/491,153 | UPS STORE | Principal | Pending | 35, 39 |
| 78/818,815 | TUPSS | Principal | Pending | 36 |
| 2,978,624 | UPS & Stylized Shield Device (b/w) | Principal | July 26, 2005 | 36 |
| 2,978,625 | UPS & Stylized | Principal | July 26, 2005 | 39 |

| | | | | |
|---|---|---|---|---|
| | Shield Device (color) | | | |
| 2,867,999 | UPS & Stylized Shield Device (b/w) | Principal | July 27, 2004 | 39 |
| 2,868,000 | UPS & Stylized Shield Device (color) | Principal | July 27, 2004 | 9, 16, 22, 35, 38, 42 |
| 2,973,108 | UPS & Stylized Shield Device (b/w) | Principal | July 19, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,981,794 | UPS & Stylized Shield Device (color) | Principal | August 2, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,973,599 | UPS & Stylized Shield Device (color) | Principal | July 19, 2005 | 35, 36, 41 |
| 2,965,392 | UPS & Stylized Shield Device (b/w) | Principal | July 5, 2005 | 35, 36, 41 |
| 78/441,655 | UPS & Stylized Shield Device (b/w) | Principal | Pending | 24, 28 |

UPS' registration of the MBE Marks with the United States Patent and Trademark Office grants them "incontestable" status under the Lanham Act, 15 U.S.C. §1065, and the marks are therefore presumptively valid. See Applied Info. Sci. Corp. v. eBay, Inc., 511 F.3d 966, 970 (9th Cir. 2007) ("Registration … discharges the plaintiff's original common law burden of proving validity in an infringement action."); United Parcel Service of America, Inc., 1996 U.S. Dist. LEXIS 8148 at **5-6 ("UPS has registered and continuously used a number of marks, including the block letters 'UPS.' UPS's marks have attained incontestable status.")

***2. Stups' Continued Use Of The MBE Marks Is Likely To Confuse Consumers.***

Because the MBE Marks are *prima facie* valid, in order to prove trademark infringement under the Lanham Act, MBE need only establish that the marks at issue are likely to be confused with the MBE Marks. Applied Info. Sci. Corp., 511 F.3d at 970. Here, there can be no question that defendants' continued, unauthorized use of the exact MBE Marks, at the same location at which they previously operated a licensed MBE franchise using those marks, will cause consumer confusion. Accordingly, defendants' conduct constitutes trademark infringement in violation of §§ 32(1), 43(a) and (c) of the Lanham Act.

It is "well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement." Baskin-Robbins, Inc. v. Taj Cal., Inc., No. 01-cv-09971, 2003 U.S. Dist. LEXIS 19946, at *57 (C.D. Cal. Oct. 8, 2003) (internal citations omitted) (holding that former franchisee's post-termination use of franchisor's marks constitutes trademark infringement, trade dress infringement, and unfair competition under the Lanham Act); Days Inns Worldwide, Inc. v. Patel, No. 04-2259, 2005 U.S. Dist. LEXIS 43234 (S.D. Cal. Feb. 8, 2005) (enjoining terminated hotel franchisee from utilizing franchisor's marks); Printers Servs. Co. v. Bondurant, No. 91-cv-0916, 1991 U.S. Dist. LEXIS 20561, at *16 (C.D. Cal. Apr. 18, 1991) ("Once a license has expired, use of the formerly-licensed trademark and trade name constitute trademark and trade name infringement."); see also Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co., 576 F. Supp. 1055, 1060 (E.D.N.Y. 1983) ("The continued use by the defendants of a licensed trademark after the Franchise Agreement had been terminated constitutes an additional trademark infringement.")

Indeed, a former franchisee's unauthorized post-termination use of a franchisor's marks invariably causes confusion among consumers. Paisa, Inc. v. N&G Auto, Inc., 928 F. Supp. 1009, 1013 (C.D. Cal. 1996) (holding that former franchisee's "continuing unauthorized use

creates a likelihood of confusion for the public and invariably threatens injury to the economic value of the goodwill and reputation associated with [the franchisor's] mark"); Precision Door Serv. v. Bell, No. C 02-01108, 2002 U.S. Dist. LEXIS 7429, at *25 (N.D. Cal. Apr. 18, 2002) ("Continued use of a franchisor's or licensor's trademark after termination of the business relationship is likely to cause confusion among consumers."). See also Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd., No. 07-cv-1455, 2007 U.S. Dist. LEXIS 34108, at *9 (E.D.N.Y. May 9, 2007) ("There is a great likelihood of confusion when the infringer uses the exact trademark as the plaintiff. In such cases, likelihood of confusion is inevitable."); Dunkin' Donuts Inc. v. Northern Queens Bakery, Inc., 216 F. Supp. 2d 31, 43-44 (E.D.N.Y. 2001); 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 25.07[1], at 25-48 (4th Ed. 2002).

Therefore, MBE is likely to succeed on its trademark claims because defendants have continued to use the MBE Marks to run the same business they ran as an authorized MBE franchisee. It is inevitable that consumers will be confused into believing that Stups' business is still an authorized franchise, even though it was terminated for failing to comply with MBE's operating standards. In fact, the leading commentator on trademarks calls such cases "open and shut." 3 McCarthy, *Trademarks and Unfair Competition* § 23.3; see also Lozano Enters. v. LA Opinion Publishing Co., No. 96-cv-5969, 1997 U.S. Dist. LEXIS 20372, at *9 (C.D. Cal. July 30, 1997) ("Where … the defendant uses the identical mark on competitive goods …, the confusion test … is open and shut.")

**B. MBE Will Suffer Irreparable Harm If The Requested Temporary Restraining Order Is Not Granted And There Is No Adequate Legal Remedy.**

If a plaintiff establishes that the defendant's trademark infringement is likely to cause consumer confusion, courts will presume, as a matter of law, that the plaintiff will suffer irreparable harm to its reputation and goodwill. Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999); Apple Computer, Inc. v. Formula Int'l, Inc.,

725 F. 2d 521, 526 (9th Cir. 1984); see also Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 25 (2d Cir. 2004) ("[W]hen in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic.")

Indeed, in a terminated franchise case, "the reasons for issuing a preliminary injunction for trademark infringement are even more compelling than in the ordinary case." Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk, 938 F. Supp. 612, 615 (C.D. Cal. 1996) (citing Church of Scientology Int'l, 794 F.3d at 42). The unauthorized use of a mark by the former franchisee "invariably" threatens injury to the economic value of the goodwill and reputation associated with a licensor's mark. Church of Scientology Int'l, 794 F.3d at 43. As a result of the franchisee's unauthorized use of the mark, the franchisor loses control over the quality and vitality of the marks. Apple Computer, Inc., 725 F.2d at 526; Hollywood Athletic Club Licensing Corp., 938 F. Supp. at 615; Church of Scientology Int'l, 704 F.3d at 43 Loss of control over the marks is what constitutes "irreparable harm" to the licensor in the franchise context. Hollywood Athletic Club Licensing Corp., 938 F. Supp. at 615. In short, a franchisee's post-termination use of the franchisor's marks causes irreparable harm to the franchisor's name, marks and the goodwill associated therewith, for which there is no adequate remedy at law. Paisa, Inc., 928 F. Supp. at 1012-13. Accordingly, Defendants' infringing conduct establishes a likelihood of confusion that, in and of itself, satisfies MBE's burden of demonstrating irreparable harm.

### C. The Balance Of Hardships Tips Sharply In MBE's Favor.

Not only is MBE irreparably harmed by defendants' continued unauthorized use of its Marks, but the balance of hardships tips sharply in MBE's favor. In trademark infringement cases, where, as here, the plaintiff establishes a likelihood of consumer confusion, courts presume, as a matter of law, that the balance of hardships sharply favors the plaintiff. Resource Lenders, Inc. v. Source Solutions, Inc., 404 F. Supp. 2d 1232, 1249 (E.D. Cal. 2005). As a

willful infringer, Defendants are entitled to little equitable consideration. See Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1333 (7th Cir. 1977) (the hardship of requiring one who willfully infringes another's mark to cease that infringement "merit[s] little equitable consideration.") "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." Krause Int'l, Inc. v. Reed Elsevier, Inc., 866 F. Supp. 585, 587-88 (D.D.C. 1994). Plainly, that is because "[o]ne who adopts the marks of another for similar goods acts at his own peril" because he has no claim to the profits or advantages derived thereby. Burger King Corp. v. Majeed, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Moreover, in intellectual property actions "where the plaintiff has made a strong showing of likely success on the merits," the balance of hardships issue "cannot be accorded significant – if any – weight" in determining whether or not to enjoin the use of infringing products. Cadence Design Sys. Inc. v. Avant! Corp., 125 F.3d 824, 828 (9th Cir. 1997). In sum, the balance of harms, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Indus. Ass'n, 929 F. Supp. 473, 478 (D.D.C. 1996).

In this case, the issuance of a temporary restraining order will not adversely affect any *legitimate* business operations, and defendants will not suffer any cognizable hardship because they have no claim of right to use the MBE Marks. See Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132 (9th Cir. 1986) ("If the defendants sincerely intend not to infringe, the injunction harms them little.") By contrast, the harm caused to MBE by defendants' ongoing, unauthorized use of the MBE Marks goes "straight to the heart" of MBE's franchise business. Phillip Morris Inc. v. Allen Distribs., 48 F. Supp. 2d 844, 855 (S.D. Ind. 1999).

**D. Granting A Temporary Restraining Order in Favor of MBE Advances the Public Interest.**

Finally, the requested temporary restraining order serves the public interest. "It is well established that trademark law protects not only the private interest of the trademark owner but also the public's interest in not being confused by the infringing products." Resource Lenders, Inc., 401 F. Supp. 2d at 1249. "Thus, the purchasing public is an unnamed party in every action for trademark infringement." Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004).

"In cases involving terminated franchisees, the potential for consumer confusion is even greater than in cases of random infringement." Paisa, Inc., 928 F. Supp. at 1013. "A franchisee who once possessed authorization to use the trademarks of its franchisor becomes associated in the public's mind with the trademark holder." Id.; see also Church of Scientology Int'l, 794 F.2d at 44. Accordingly, when a terminated franchisee continues to use the franchisor's marks, "the unauthorized use confuses and defrauds the public." Paisa, Inc., 928 F. Supp. at 1013; Printers Servs. Co., 1991 U.S. Dist. LEXIS 20561 at *20.

Here, the issuance of a temporary restraining order would serve the public interest by ensuring that consumers are not misled. Consequently, for all of the foregoing reasons, a temporary restraining order should issue to protect MBE's legitimate interests in the MBE Marks.

## CONCLUSION

MBE, for the forgoing reasons, respectfully requests the following relief pending further order of Court:

A. A temporary restraining order, enjoining defendants, and their agents, servants and employees, and those persons in active concert or participation with them from:

1. using or displaying MBE's trademarks or service marks, or any other logos, symbols or trade dress in connection with advertising, distribution, or display for sale of any product or service;

2. making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that defendants' store is in any manner, directly or indirectly, associated, affiliated, connected with, licensed, sponsored, authorized or approved by MBE;

3. taking any action, directly or indirectly in any form or manner whatsoever that is likely to dilute the distinctive quality of MBE's famous registered MBE Marks or otherwise taking any action likely to cause tarnishment or disparagement to MBE's business reputation;

4. otherwise infringing MBE's trade name, trademark or service marks, or otherwise competing unfairly with Plaintiffs in any manner;

B. An order requiring defendants to file with the Court and to serve upon MBE within ten (10) days after entry of any temporary restraining order, a written report, under oath, setting forth the manner in which defendants have complied with that order;

C. An award of attorneys' fees and costs; and

D. Such other and further relief as the Court deems just and proper.

Dated: March 18, 2008

DLA PIPER US LLP

By /s/ Paul A. Reynolds
PAUL A. REYNOLDS
Attorneys for Plaintiffs
Mail Boxes Etc., Inc.
paul.reynolds@dlapiper.com

# EXHIBIT A

# CONTINUING PERSONAL GUARANTEE

As an inducement to MAIL BOXES ETC., INC., a Delaware corporation ("MBE"), to enter into that certain Franchise Agreement of July 6, 2005 (the "Franchise Agreement") by and between MBE and Stugs, Inc ("Franchisee"), the undersigned Guarantor(s), jointly and severally, absolutely and unequivocally personally guarantee the performance by Franchisee of all obligations of Franchisee to MBE, including, without limitation, royalty fees, marketing fees, credit sales in the form of trade receivables, performance of all other covenants pursuant to the Franchise Agreement and any extensions or renewals thereof, equipment leases or sales, promissory notes and all other obligations now due MBE or hereafter incurred in favor of MBE ("Obligations") should Franchisee fail to perform. My Obligations under this Continuing Personal Guarantee are not transferable.

I, the undersigned waive: (a) all presentments, demands for performance, notices of nonperformance, protests, and all other notices, including but not limited to notices of protest, dishonor, any default, partial payment or nonpayment of all or any part of the obligations guaranteed hereunder and the existence, creation, or incurring of new or additional obligations guaranteed hereunder; (b) any right to require MBE to proceed against Borrowers or any other person, to proceed against or exhaust any security held by Borrowers or any other person for the obligations guaranteed hereunder or to pursue any other remedy in MBE's power whatsoever; (c) any defense arising by reason of the invalidity, illegality or lack of enforceability of the obligations guaranteed hereunder or any part thereof, or by reason of any incapacity, lack of authority, death, disability or other defense of Borrowers or any other person, or by reason of the failure of MBE to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of Borrowers or any other person, or by reason of the cessation from any cause whatsoever of the liability of Borrowers or any other person with respect to all or any part of the obligations guaranteed hereunder, or by reason of any act or omission of MBE or others which directly or indirectly results in the discharge or release of Borrowers or any other person or any obligations guaranteed hereunder or any security therefore, whether by operation of law or otherwise; (d) any defense arising by reason of MBE's failure to obtain, perfect, or maintain a perfected or prior security interest in, lien or encumbrance upon, any property of Borrowers or any other person, or by reason of any interest of MBE in any property, whether as owner thereof or the holder of a security interest therein or lien or encumbrance thereon, being invalidated, avoided, declared void, fraudulent or preferential or otherwise set aside, or by reason of any impairment of MBE of any right to recourse or collateral; (e) any right to require MBE to marshall any assets in favor of the undersigned; (f) any defense based upon any failure of MBE to give Borrowers or the undersigned notice of any sale or other disposition of any property securing any or all of the obligations guaranteed hereunder or any guarantee thereof, or any defect in any notice that may be given in connection with any sale or other disposition of any such property, or any failure of MBE to comply with any provision of applicable law in enforcing any security interest in or lien upon any such property, including any failure by MBE to dispose of any such property in a commercially reasonable manner; and (g) any defense based upon or arising out of any bankruptcy, insolvency, reorganization, arrangement. readjustment of debt, liquidation or dissolution proceeding commenced by or against Borrowers or any other person, including any discharge of, or bar against collecting, any of the obligations guaranteed hereunder (including any interest thereon), in or as a result of any such proceeding.

I shall not have any right of subrogation until all indebtedness of Franchisee to MBE shall be paid in full. I waive any right to collateral and waive any right to participate in any collateral, until all indebtedness of Franchisee to MBE shall have been paid in full.

I shall pay reasonable attorneys' fees and all other costs and expenses which may be incurred by MBE in the enforcement of this Continuing Personal Guarantee.

This is a continuing personal guarantee and it shall remain in full force during and after the Franchise Agreement's term, until all obligations owed by Franchisee to MBE pursuant to the Franchise Agreement are fully performed.

In the event of any default by Franchisee or by Guarantors, Guarantors acknowledge and agree that MBE may exercise all rights of offset to recoup any obligations owed to MBE.

I subordinate any debts and obligations of Franchisee to me to all the debts and obligations of Franchisee to MBE.

Should any one or more provisions of this Continuing Personal Guarantee be determined to be illegal or unenforceable, all other provisions shall nevertheless remain effective.

This Agreement shall inure to the benefit of and bind, as the case may require, MBE, its successors and assigns, including the assignees of any credit guaranteed hereby, and my heirs, executors, administrators, successors and assigns.

I specifically acknowledge that I have read all the terms of this Continuing Personal Guarantee, have received a true copy of it and agree to be bound by its terms.

Dated: July 6 2005, at Bellmore NY
(City/State)

Stuart Beck
Signature of Individual

______________________________
Signature of Individual

______________________________
Signature of Individual

______________________________
Signature of Individual