PAUL A. REYNOLDS (Bar No. 179656)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*pro hac vice to be filed*)
PETER M. ELLIS (*pro hac vice to be filed*)
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60610
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Plaintiff
**Mail Boxes Etc., Inc.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAIL BOXES ETC., INC.,**<br>**Plaintiff,**<br>**v.**<br>**STUPS, INC. and STUART BERK,**<br>**Defendants.** | Case No. 3:08-CV-00491-JAH-POR<br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br>Date: April 1, 2008<br>Time: 2:30 p.m.<br>Judge: Hon. John A. Houston<br>Place: Courtroom 11<br>**ORAL ARGUMENT REQUESTED** |

Plaintiff Mail Boxes Etc., Inc. ("MBE"), by and through its attorneys, hereby submits the following Reply Memorandum in Support of its Application for Temporary Restraining Order, and states as follows:

## I. SUMMARY

Defendants fail to address the singular issue raised in MBE's Application for Temporary Restraining Order – whether Stups, Inc.'s ("Stups") unauthorized use of MBE's Marks constitutes a violation of the Lanham Act. This omission is intentional and no mistake. The reason this issue is not addressed in the Opposition is quite apparent - there is no justification or defense for Stups' unauthorized use of MBE's Marks in violation of the Lanham Act. Simply put: MBE

terminated Stups' franchise agreement (the "Agreement") and, as a result, any and all rights Stups previously had to use MBE's Marks were also terminated.

The Defendants desperately attempt to distract the Court through a lengthy discussion of baseless claims that Stups contends have accumulated during its relationship with MBE. Stups further maintains that the termination of the Agreement was improper and thus should be treated as a nullity. These assertions are nothing more than a red-herring, however. The reality is that Defendants arguments are irrelevant to the inquiry of whether Stups' conduct constitutes a violation of the Lanham Act – the sole issue before the Court.

Faced with reliable evidence to the contrary, Defendants seek to characterize the irrational behavior and threats of violence that are the genesis of this dispute as mischaracterizations and misreportings by MBE. (Def.'s Br. at pp. 16-17; Berk Decl. at ¶ 24.7.) In fact, Mr. Berk testifies that: "The reference to [*sic*] there have been several discourteous communications between me and MBE representatives over a two year period are inaccurate and are unfairly presented in excerpted form and out of context." (Berk Decl. at ¶ 24.7.) What Defendants refuse to acknowledge, however, is that there is no professional "context" in which Mr. Berk's abusive communications are accepted and that there is no misunderstanding his intent to bully MBE (and UPS) to get his way. (*See* Supplemental Declaration of Robert Kaufman at ¶ 8.)

In sum, Defendants' erratic threats of violence and destruction led to the termination of the Agreement and, consequently, Stups has no basis in law or fact for his continued use of the MBE Marks.

## II. ARGUMENT

### A. DEFENDANTS CHALLENGE TO THIS COURT'S JURISDICTION AND VENUE IS PLAINLY CONTRADICTED BY THE EXPRESS TERMS OF THE AGREEMENT.

Defendants' contention that MBE was required to first mediate this dispute is a blatant attempt to mislead the Court and is disingenuous, at best. In their Opposition, Defendants refer this Court to Paragraph 20.2(a) of the Agreement which requires that a party first attempt to resolve claims or controversies arising out of the Agreement in mediation. What Defendants

conveniently fail to note, however, is the operative, governing language of Paragraph 20.2(b) of the Agreement. Paragraph 20.2(b), provides that:

> MBE *shall not* be required to attempt first to mediate a controversy or claim against Franchisee through mediation as set forth in Section 20.2(a) if such claim or controversy concerns an allegation or allegations by MBE that Franchisee has violated (or threatens to violate, or poses an imminent risk of violating) any of MBE's federally protected intellectual property rights in the Marks or in the system, in which case *MBE shall reserve the right to immediately seek injunctive relief within the courts of the United States of America located within the Southern District of California.*

(Agreement at ¶ 20.2(b) (emphasis added).) A cursory review of MBE's Verified Complaint and the instant Motion makes clear that this is an action raising claims and allegations that Stups "has violated . . . MBE's federally protected intellectual property rights in the Marks [and] in the system," and therefore MBE is authorized to immediately seek a Court ordered injunction to prevent Defendants' unlawful misuse of the MBE Marks. (Id.) Similarly, pursuant to Paragraph 20.2(b), venue of this action is not only proper within the United States District Court for the Southern District of California, but mandatory.[1] To suggest otherwise is to ignore – as Defendants apparently have done – the clear and unambiguous language of the Agreement.

### B. DEFENDANTS HAVE RAISED NO DEFENSES TO MBE'S LANHAM ACT CLAIMS AND THEREFORE MBE IS ENTITLED TO AN INJUNCTION.

It is undisputed that, effective March 14, 2008, MBE terminated Stups' franchise rights and immediately undertook measures to end its business relationship with Stups. (Def.'s Br. at p. 12.) By this termination, MBE rescinded Stups' limited license to use the MBE Marks, and MBE now seeks a temporary restraining order enjoining Stups from using the Marks without MBE's authorization. Accordingly, the only issue before this Court is whether a terminated franchisee

---

[1] Defendants further seek to challenge the jurisdiction of this Court in connection with the Non-Competition and Non-Solicitation Agreement, maintaining that enforcement of the provisions thereof should be venued in New York. In essence, Defendants seek to have this single claim for relief adjudicated separately from 99% of the remaining claims in this case. Such bifurcation does not serve the interest of judicial efficiency. In any event, this issue is not

can infringe and dilute a franchisor's marks pending the issuance of a preliminary injunction. In order to resolve that issue, the Court must determine only whether Defendants' use of the MBE Marks is lawful and whether MBE will suffer harm as a result of Stups' continued misconduct. Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 602 (9th Cir. 1991); Nichols v. Deutsche Bank Nat'l Trust Co., No. 07-cv-2039, 2007 U.S. Dist. LEXIS 86223, at *4 (S.D. Cal. Nov. 21, 2007). But rather than address the limited issue before this Court, Defendants argue that MBE's termination of the Agreement was improper, that MBE committed various pre-termination breaches of the Agreement, and that MBE has unclean hands due to MBE's failure to mediate its Lanham Act claims. Even if Defendants' contentions were true, which they are not, none of these issues are valid defenses to MBE's Lanham Act claims and, therefore, as discussed more fully below, the requested injunction should issue.

**1. *The Propriety Of MBE's Termination of the Agreement Does Not Bear On The Issuance Of A TRO And Is Not A Defense to a Lanham Act Claim.***

Defendants contention that the Agreement's termination was invalid is absurd. One need only review Mr. Berk's outrageous conduct and the impact such conduct has had on MBE's operations and franchise business to observe the devastating effect on the business relationship.[2] (Suppl. Kaufman Decl. at ¶ 8.) In any event, whether MBE rightfully terminated the Agreement is not relevant to the Court's determination of whether an injunction should issue for the purposes of this application for temporary restraining order. See AT&T Corp. v. Vision One Security Systems, No. 95-0565, 1995 U.S. Dist. LEXIS 11279, at **18-19 (S.D. Cal. July 27,

---

currently before the Court as there is no question that MBE's Lanham Act claims are proper in this Court.

[2] Defendants amazingly argue that in the face of physical threats of violence to MBE (and UPS) personnel, MBE was required under the terms of the Agreement to provide notice and an opportunity to cure. In light of the risk of Berk creating a "body count" in addition to his threats to blow up a UPS Customer Center, a non-party to the Agreement, MBE did what any responsible business would do under the circumstances, and terminated Stups' franchise rights as quickly as possible. Any contention that Mr. Berk's actions do not reflect "materially and unfavorably upon the operations and reputation of the Center at the Location or upon MBE's network," is an absurd proposition that hardly survives statement.

1995) ("While the Court recognizes that [the franchisee] may have claims against [the franchisor] for its conduct in relation to the termination of the license, the Court finds that any such claims are not sufficient to defeat the merits of the preliminary injunction.") Even if MBE's termination of the Agreement were improper, which it is not, the appropriate remedy for wrongful termination is an affirmative breach of contract claim seeking money damages, not the unauthorized use of a franchisor's trademarks. AT&T Corp., 1995 U.S. Dist. LEXIS 11279 at **18-19 (citing Burger King Corp. v. Hall, 770 F. Supp. 633, 638 (S.D. Fla. 1991) ("As a matter of law, [] a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's marks. Thus, while a terminated franchisee may seek money damages for any injuries resulting from the alleged wrongful termination of its franchise, it may not continue to use the franchisor's trademarks without authority in violation of law.")); Best Western Int'l, Inc. v. Patel, 523 F. Supp. 2d 979, 985 (D. Ariz. 2007) (same; applying California law); Burger King Corp. v. Majeed, 805 F. Supp. 994, 1003 (S.D. Fla. 1992) (same); Romacorp, Inc. v. TR Acquisition Corp., No. 93 Civ. 5394, 1993 U.S. Dist. LEXIS 16923, at *37 (S.D.N.Y. Dec. 1, 1993) ("As all of the franchise decisions point out, in the case of alleged breach by the franchisor, the franchisee's remedy is to sue for damages.") Thus, Stups' unsupported contention that MBE "must first demonstrate that Defendants' franchise rights have been lawfully terminated," is a blatant mischaracterization of the law. (Def.'s Br. at p. 18.)

Additionally, even if MBE had improperly terminated the Agreement, such wrongful termination is not a valid defense to a Lanham Act claim. Hall, 770 F. Supp. at 639 (citing 15 U.S.C. § 1115(b)) ("Hall's 'wrongful termination' defense also falls outside the exclusive list of eight statutory defenses to a trademark infringement action based on an incontestable mark.") Finally, as a policy matter, were franchisees able to defeat temporary and preliminary injunctive relief against unauthorized use of their franchisors' marks by simply contesting the validity of

franchise termination, franchisors would lose control of their marks for the extended period of time until adjudication of permanent injunctive relief and thereby place their marks in jeopardy of abandonment. Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 435 (7th Cir. 1989) ("Once a franchisee has been terminated, the franchisee cannot be allowed to keep on using the trademark. The owner of a trademark has a duty to ensure the consistency of the trademarked good or service. If he does not fulfill this duty, he forfeits the trademark. ... If the owner of the trademark has broken off business relations with a licensee he cannot ensure the continued quality of the ex-licensee's operation, whose continued use of the trademark is therefore a violation of trademark law."); Prudential Ins. Co. v. Ikomoni, No. 96 Civ. 7272, 1996 U.S. Dist. LEXIS 16433, at **6-8 (S.D.N.Y. Nov. 6, 1996) (granting preliminary injunction in favor of franchisor notwithstanding franchisee's wrongful termination defense on this basis). Defendants fail to cite any authority whatsoever suggesting that this Court should consider the validity of the termination of the Agreement at this stage of the litigation.

**2. *Defendants' Pre-Termination Breach Of Contract Claims Are Not Properly Before the Court And Are Irrelevant to Whether MBE's Application For TRO Should Be Granted.***

In their Opposition Brief, Defendants also provide a laundry list of MBE's purported pre-termination breaches of the Agreement. Assuming, *ad arguendo*, not only that MBE engaged in the alleged conduct but also that the alleged conduct constituted a breach of the Agreement, these claims, like Defendants' wrongful termination claim, are not properly before the Court at this juncture and have no bearing on whether the requested TRO should issue.

As an initial matter, rather than asserting affirmative breach of contract claims by way of counterclaim in this action as required under FRCP 13, Defendants improperly attempt to raise these claims in response to MBE's TRO application. See Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7, 747 F.2d 1195, 1198 (8th Cir. 1984) ("If a counterclaim is to be asserted, it

should be designated and pleaded as such.") Putting aside the fact that Defendants have not filed these breach of contract claims, as previously noted, pre-termination claims of breach are not relevant to a trademark infringement analysis:

> A franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. When the terms of the franchise agreement are violated, the franchisor can terminate the franchise and enjoin any continued, unauthorized use of its trademark by the former franchisee. Where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant.

Midas Int'l Corp. v. T & M Unlimited, Inc., No. 00-CV-0899, 2000 U.S. Dist. LEXIS 16978, at *13 (W.D.N.Y. Nov. 17, 2000); accord AT&T Corp, 1995 U.S. Dist. LEXIS 11279 at *19 (citing S & R Corp., 968 F.2d at 377 ("Where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act.")). See also Cle-Ware Rayco, Inc. v. Perlstein, 401 F. Supp. 1231, 1234 (S.D.N.Y. 1975) (holding that franchisee's pre-termination breach of contract claim against franchisor "has little relevance on the immediate question of whether the [franchisee] can continue to use the [franchisor's] mark"); Roma Corp., Inc. v. Slabakis, No. 93 Civ. 5394, 1993 U.S. Dist. LEXIS 16923, at *37 (S.D.N.Y. Dec. 1, 1993) ("Any other rule would operate to authorize the illegal use of a trademark under federal law.").

### *3. Defendants' "Unclean Hands" Defense Has No Basis In Fact Or Law.*

Defendants baldly assert that MBE "has unclean hands" because it has "improperly circumvented[ed] the initial mediation requirement imposed by the Franchise Agreement." (Def.'s Br. at p. 3.) As discussed above, and unequivocally set forth in the Agreement, MBE was not obligated to mediate the claims raised in its Application. (Agreement at ¶ 20.2(b).) Even if Defendants were correct that the Agreement requires mediation of the claims presently before the

Court, MBE's alleged circumvention of a mandatory mediation clause would not provide a cognizable defense to MBE's wholly unrelated claim of trademark infringement under the Lanham Act. It is well settled that the affirmative defense of unclean hands is a principle that "demands that a plaintiff act fairly *in the matter for which he seeks a remedy*." Kendall-Jackson Winery, Ltd. v. Superior Court of Stanislaus County, 76 Cal. App. 4th 970, 978 (1999) (emphasis added). The defense of unclean hands does not, however, apply in every instance, but instead, the alleged misconduct must relate to the controversy at issue. See Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837 (9th Cir. 1987) (quoting Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985)) ("'To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.'") Simply put "[e]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue*." Fuddruckers, 826 F.2d at 847 (quoting CIBA-GEIGY Corp. v. Bolar Pharmaceutical, 747 F.2d 844, 855 (3d Cir. 1984)) (emphasis added).

Here, MBE seeks to enjoin Defendants from their continued unauthorized use of the MBE Marks in violation of the Lanham Act. In this regard, "it is black letter law in a Lanham Act action that the unclean hands alleged must relate to the [the franchisor's] own misuse of its Mark." Burger King Corp. v. Hall, 770 F. Supp. 633, 639 (S.D. Fla. 1991) (internal citations omitted); see also Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 126 (S.D.N.Y. 1999). In Hall, the franchisor sought an order enjoining the franchisee's continued use of its trademarks despite termination of the franchise agreement. 770 F. Supp. at 634. The franchisee argued, among other things, that the franchisor's unclean hands barred it from obtaining injunctive relief on the basis that the franchise had been wrongfully terminated. Id. at 639. The court rejected the franchisee's argument, holding that as the franchisee had failed to allege that the franchisor misused its own marks prior to seeking injunctive relief, stating that "the affirmative defense of

unclean hands, which is really another label for [the franchisee's] wrongful termination claim, is inapplicable." Id. Furthermore, a "simple breach of contract" does not merit application of the unclean hands doctrine. Dollar Systems, Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989). Because Defendants set forth no allegation that MBE misused its own Marks prior to seeking injunctive relief, the affirmative defense of unclean hands fails.

#### 4. ***MBE Will Continue To Suffer Irreparable Harm If The Requested Injunction Is Not Granted.***

The fundamental intent of the trademark protections offered by the Lanham Act is to avoid consumer confusion through the unauthorized, misuse of marks which inevitably causes irreparable harm to the trademark owner's business and goodwill. Parfums Givenchy v. Drug Emporium, 38 F.3d 477, 484 (9th Cir. 1994). Defendants provide no relevant factual or legal basis for their unauthorized use of the MBE Marks but instead summarily conclude that MBE will suffer no injury because Stups previously held a license to use the Marks. Defendants' argument is absurd. Mr. Berk himself testifies that Stups' license to use the MBE Marks has been terminated.[3] (Berk Decl. at ¶¶ 21-22.) As a result of this termination, MBE revoked Stups' limited license to use the Marks. (Agreement, at ¶14.1(a).) Thus, the irreparable harm associated with the unauthorized use of a trademark is presumed due to the likelihood of confusion caused by such use. Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999); Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk, 938 F. Supp. 612, 615 (C.D. Cal. 1996); see also Church of Scientology Int'l v. Elmira Mission, 794 F.2d 38, 42-43 (2d Cir. 1986).

---

[3] In any event, where a franchisor has rescinded the franchisee's right to use the marks at issue, "a trademark licensor may succeed in a trademark infringement action against one who is still his licensee." Prudential Ins. Co. of America, Inc. v. Ikomoni, No. 96 Civ. 7272, 1996 U.S. Dist. LEXIS 16433, at **6-7 (S.D.N.Y. Nov. 6, 1996) (citing Franchised Stores of New York, Inc. v. Winter, 394 F.2d 664, 668 (2d Cir. 1968)).

Defendants also contend that the balance of hardships favors them because of the disproportionate economic and bargaining position of the parties as well as MBE's purportedly wrongful termination of the Agreement. (Def.'s Br. at p. 22.) In advancing this argument, Defendants ignore the extensive contrary authority cited in MBE's Opening Brief holding that willful trademark infringers, such as Stups, are entitled to little equitable consideration. See, e.g., Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1333 (7th Cir. 1977). This Court's issuance of a temporary restraining order will not adversely affect any *legitimate* business operations, and Defendants will not suffer any cognizable hardship because they have no claim of right to use the MBE Marks. See, e.g., Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132 (9th Cir. 1986). Defendants also ignore the public interest in avoiding consumer confusion as a result of Stups' trademark infringement. See, e.g., Paisa, Inc. v. N & G Auto, Inc., 928 F. Supp. 1009, 1013 (C.D. Cal. 1996).

## III. CONCLUSION

For all of the reasons stated in MBE's Memorandum of Points and Authorities In Support of Plaintiff's Application for Temporary Restraining Order and those set forth herein, this Court should grant MBE's Application.

Dated: March 25, 2008

DLA PIPER US LLP

By /s/ Paul A. Reynolds

PAUL A. REYNOLDS
Attorneys for Plaintiff Mail Boxes Etc., Inc.
paul.reynolds@dlapiper.com