# EXHIBIT I

Received: from 68.194.66.92 [68.194.66.92] by cmsweb09.cms.usa.net (USANET web-mailer CM.0402.7.83); Tue, 26 Feb 2008 14:59:44 -0000
Date: Tue, 26 Feb 2008 07:59:44 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <sdandrea@ups.com>
Subject: missing or stolen package Allow Subject
CC: <rkaufman@mbe.com>, <jaschlessinger@mbe.com>, <smathis@mbe.com>, <dhigginson@mbe.com>, <ehankins@mbe.com>
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <964mBZo7S1296S09.1204037984@cmsweb09.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

----------------------------------------------------------------------------

Steve,

UPS has just put me out of business. The package that caused this was tracking # 1z0064f20393830037. This package was physically scanned onto a truck Monday Feb. 25th. 2008 and never appeared again. The package was 75 pounds and measured 34x34x6. This was for my last big customer. In the past UPS has caused me to lose other big customers due to their ineptness. The best part of this is neither the center manager or the ssr have the guts to come into to speak to me or examine the other packages in the shipment of five(I received only four). The only way to save my business is for them to come and pay for the lost package either today or tomorrow so I can save my customer. If I follow UPS procedure then I have to fill out cvlaim work and wait for payment from their insurance company if they approve the claim. This process takes anywhere from three to five weeks. In that time all I have is a disgruntled excustomer. I will not tolerate center managers with attitudes or ssrs and their managers who have attitude problems and will not face me one on one. Since I am not getting paid for this shipment I will not have funds to pay UPS and other bills. This is not the first time the center in Uniondale has caused problems for me, but I am now going back to basics and handling this my own way unless you or MBE intervene in a timely manner. The only thing that UPS has done right is their PCA team who show concern and do their jobs.please let me know if there is a UPS corporate contact for UPS.

Stuart Berk

Store#5603

Phone 516-794-1540

EXHIBIT I
Pg 104

Received: from 68.194.66.92 [68.194.66.92] by cmsweb29.cms.usa.net (USANET web-mailer CM.0402.7.83); Wed, 27 Feb 2008 21:40:51 -0000
Date: Wed, 27 Feb 2008 14:40:51 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <rkaufman@mbe.com>, <store5603@theupsstore.com>, <sdandrea@ups.com>
Subject: RE: missing or stolen package Allow Subject
CC: <jaschlessinger@mbe.com>, <SMathis@mbe.com>, <DHigginson@mbe.com>, <ehankins@mbe.com>
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <399mBAVnz8014S29.1204148451@cmsweb29.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

--------------------------------------------------------------------------------

Bob,

The package was found to be in Ohio by my research and help from Ed D. No one at the center helped or is willing to make arrangements to get the package back in a timely manner. Ed D. requested the package to be aired but UPS sent it ground. Scot Imperiale from UPS security has been involved and has been a big asset in trying to expedite the delivery. The center manager Dave Mazzolla has not returned any calls and has been of no help. This situation has caused hard feelings along with a past history of problems with this center. I feel that working with this center in the future will not be as it should be. If Dave has a vendetta or is prejudice against me this will only hurt my business and reflect on MBE. A sit down with MBE and UPS both present and willing to resolve any future problems is the only remendy. Compensation for what has happened is expected. I have made a simple request through the PCA team to have the package delivered between 8:15 and 8:30 tomorrow which the center has turned down. Scot has offered to deliver the package on his own. Nothing from Dave,Jeff M. or anyone else from the center. This is not the first time the center has caused problems which you are aware of and if nothing is done now I have a feeling that they will do more to hurt my business.

Stuart Berk

Store 5603

Phone 516-794-1540

EXHIBIT I
Pg 105

------ Original Message ------
Received: 01:41 PM MST, 02/26/2008

From: <rkaufman@mbe.com>
To: <store5603@theupsstore.com>, <sdandrea@ups.com>
Cc: <jaschlessinger@mbe.com>, <SMathis@mbe.com>, <DHigginson@mbe.com>, <ehankins@mbe.com>
Subject: RE: missing or stolen package

Steve

Looks like the package is in Ohio and we are working on getting it to Stuart.

Bob

Bob Kaufman

District Consultant

Region I NJ257

The UPS Store/MBE

631 512 1999 cell

631 368 0970 fax

rkaufman@mbe.com

EXHIBIT I
Pg 106

Stuart,

I left a message for Bob and Jay. Lets discuss Monday afternoon. Have a nice weekend

All the best,
Steve

Steve Dandrea
MBE/The UPS Store
North East Region Coordinator
Office 973.839.6942
Cell 646.573.3744
Fax 973.839.3244

-----Original Message-----
From: Stuart Berk [mailto:store5603@theupsstore.com]
Sent: Friday, February 29, 2008 4:43 PM
To: DANDREA STEVE (NYC1SSD)
Subject: Fwd: UPS customer service

Steve,

No calls from my SSR or center manager. My "excustomer" came yesterday and guess what, I still have his five cartons and no money for payment of the shipping. He has yet to receive a letter of apology from UPS. I expected to be treated thisway but not my customers. there are many issues that have come up recently and we need a definite sit down between myself MBE and UPS.The quicker this is done the faster the broken fences can be mended. Bob has gone as far as he can but this has now grown out of proportion. Lets settle the issues at hand since I am very uncomfortable with my dealings with UPS on the local level. If you are unavailable then have Bob and Jay get all the parties involved to have a meeting in my store early next week. My business is suffering since this fiasco I have fallen behind in all the paperwork necessary to run a business.

PS: If I did not provide UPS with the additional tracking number no one would have found the package. All these problems would never escalated if someone from the center would have come over when requested on Monday or I was permitted to search Uniondale. When the package was finally found back in Ohio UPS dropped the ball again by saying that they were next day air back to me and it came ground. When the package was in Uniondale on Thursday the center refused to deliver it on an early delivery truck( I asked for it to be here between 8:15 and 8:30). This was after their 8:00 commit timefor early AM deliveries. UPS also made the same request was turned down.

Stuart Berk

EXHIBIT I
Pg 107

Store 5603

Phone 516-794-1540

Forwarded message is attached.

EXHIBIT I
Pg 108

# EXHIBIT J

Date: Wed, 27 Feb 2008 13:59:59 -0700
From: "Stuart Berk" <store5603@theupsstore.com>
To: <exchiang@mbe.com>
Subject: UPS customer service
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <428mBAu782688S02.1204145999@cmsweb02.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

Esther,

As per our conversation a little while ago here are all the details. In December UPS missed two Monday morning sweeps,Dec. 3 and Dec.10th. Saturday Dec. 22nd. I had to beg to get picked up and was told to wait at least an hour. I told them I had 15 next day air packages and I was closing in 15 minutes at 4:30. They got a truck here after I locked up and reopened so they could pick up the packages. The excuses for Dec. 3rd. was they forgot and Dec. 10th. was they were too busy. On December 26th. my normal 6:00 pick up did not happen until 6:38. Again they were too busy. On Friday feb.1st. my 6:00 pick-up did not happen until 7:10.The excuse was they forgot. My store is between3 and 4 miles from the center with most of the trucks having to drive past. In my shopping center there is a drop box with a 6:45 pick up which they do not miss. The center manager Dave Mazzolla was in my store with half hearted apologies the following week telling me I would receive the proper service going forward. This past Monday was the final straw. Reference tracking # 1z0064f20393830037 for this fiasco. When I tried to reach out for the manager he not once retutrned my calls or offer to visit my store to resolve the problem. All i wanted him to do was look at the package and know what he was looking for. My SSR was of little or no help. Not once did he even call or visit to try to resolve this problem. The center manager now refuses to communicate with me. Going forward I do not feel that I will be able to work with this person who I depend on. since Dave Mazzolla has taken his position I have never felt comfortable with him. I do not know if he has a vendetta against me or is prejudice against me.Being Jewish I have faced prejudice many times in my life and I will not tolerate this treatment. The service level at management leaves a lot to be desired. I work well with my drivers. I am hoping that MBE can work these problems out since this last incident has cost me one of my last big customers. UPS must apologize and compensate me for the damages they have caused financially. Being of the Jewish Faith if this can not be taken care of by MBE and UPS then I will have to go to the ADL for support which is not what I want to do. I need answers this week or I will assume the worst and be forced to do what has to be done with the proper channels. I am also faxing you a copy of the peak season schedules.

Stuart Berk

Store 5603

Phone 516-794-1540

EXHIBIT J
Pg 109

# EXHIBIT K

Date: Wed, 05 Mar 2008 07:47:30 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <sdandrea@ups.com>
Subject: problems Allow Subject
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <401mceoUd1434S14.1204728450@cmsweb14.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

--------------------------------------------------------------------------------

Steve,

After speaking with you yesterday I checked my records and guess what, this year for January I had over a 20% increase over last year. I guess I am doing something right. I know how to run a business and provide customer service, despite having to depend on UPS. Last night I received an e-mail from San Diego ( Tracy Buckley) and it never addressed my biggest concern. If both UPS and MBE condones the customer treatment and service I have been receiving maybe I am asking the wrong people for help. I still have not had my directions and location corrected since bringing it to everybodys attention last July. I am not listed in the verizon phone book since Wohlstrom erred and after finally proving this they said I was right. Try being in business with no listing in the phone book and having wrong directions on-line is a major hurdle. The worst part is when UPS makes a mistake and does not live up to their promises then I look bad. Letters of apologies are never sent out even though they were promised. Customer retention is getting harder since I have numerous problems caused by UPS. This is compounded by having a center manager who for some reason unknown to me does not work well with me. I have my thoughts. Staying in business is now getting harder since I do not know what is going to happen next. I have too much time and money invested in this store and I will not be pushed out by anyone. I do not want to beleive that my personal concerns are being swept under the rug to save UPS and MBE.

Stuart Berk

Store 5603

Phone 516-794-1540

EXHIBIT K
Pg 110

# EXHIBIT L

Date: Thu, 06 Mar 2008 15:12:17 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <smathis@mbe.com>
Subject: customer service, no listing in verizon, direction to store Allow Subject
CC: <ehankis@mbe.com>, <dhigginson@mbe.com>, <sdandrea@ups.com>, <jaschlessinger@mbe.com>, <rkaufman@mbe.com>
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <393mcFwLR6034S10.1204841537@cmsweb10.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

-------------------------------------------------------------------------------

Stuart,

Last week I sent a letter of concern to Esther Jiang in the resolution department. As of today the problem concerning the center manager with me has yet to be addressed. If he has a problem with me then say so. I am being forced to turn this matter over to the ADL to investigate. I feel that he has something against me and let them find out what it is. Being Jewish I know about prejudice and antisementism. If this is the case then UPS must do something now. The second problem is Wahlstrom omiting my store in Nassau County Verizon Yellow Pages. they were supposed to do mailings in December and the begining of this year. As of today only one mailing in December. They are working on another mailing for sometime this month. This makes me a store with out exposure in the phone book. Last July I informed MBE that the directions that were online to my store were wrong, as of today they have yet to be corrected.This does not help to bring customers to my location. My claim rate is below your goal by a large amount. I have run out of money to put into this business. Rather then pursue these issues in public I have made a suggestion on how to handle this situation in private. I admit that either MBE or UPS would have to come up with some money but in the big picture this amount is nominal to them. If I am forced out of business then no no gets paid and hard feelings will follow. The ideal situation would be to have another store buy my store and let either MBE or UPS make up the difference. I am not looking to make money on anyone but to pay my bills and recoup on my original investment. Since this is a time sensitive situation I would appreciate an answer as soon as possible. The way I suggested everyone is happy and there are no hard feelings or bad publicity. Any additonal details that are neede I am more than willing to discuss with you or any other member at MBE.

Stuart Berk

Store 5603

Phone 516-794-1540

EXHIBIT L
Pg 111

# EXHIBIT M

Date: Mon, 10 Mar 2008 14:36:26 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <rkaufman@mbe.com>
Subject: Re: pack and ship Allow Subject
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <735mcJVjA4534S06.1205184986@cmsweb06.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

---

Bob,

I do not have a problem with the pack and ship program. I do have numerous problems with other issues. I will see you probably on Thursday with Steve. As of now I have not perceded with any actions until I meet with Steve. Hopefully MBE will be willing to go along with my suggestions and everybody will be happy and no hard feelings will follow. I hope Steve does not plan to come in and lecture me because I am not in the mood.

Stuart Berk

------ Original Message ------
Received: 12:17 PM MST, 03/09/2008
From: <rkaufman@mbe.com>
To: <store5603@theupsstore.com>
Subject: pack and ship

Stuart

Look again at the BPR sheet beyond claims.Your center packed numbers for the first 3 quarters were under 4%.After pack and ship your 4th quarter and Jan over 20%.In your case it looks like pack and ship has helped your store perform since it began.Keep it up.

Bob

Bob Kaufman
District Consultant
Region I NJ257
The UPS Store/MBE
631 512 1999 cell
631 368 0970 fax

rkaufman@mbe.com

EXHIBIT M
pg 112

# EXHIBIT N

Received: from 68.194.66.92 [68.194.66.92] by cmsweb09.cms.usa.net (USANET web-mailer CM.0402.7.83); Tue, 26 Feb 2008 14:59:44 -0000
Date: Tue, 26 Feb 2008 07:59:44 -0700
From: "Stuart Berk" <store5603@theupsstore.com> Add to Address Book Block Sender Allow Sender
To: <sdandrea@ups.com>
Subject: missing or stolen package Allow Subject
CC: <rkaufman@mbe.com>, <jaschlessinger@mbe.com>, <smathis@mbe.com>, <dhigginson@mbe.com>, <ehankins@mbe.com>
X-Mailer: USANET web-mailer (CM.0402.7.83)
Mime-Version: 1.0
Message-ID: <964mBZo7S1296S09.1204037984@cmsweb09.cms.usa.net>
Content-Type: text/html; charset=ISO-8859-1

--------------------------------------------------------------------------------

Steve,

UPS has just put me out of business. The package that caused this was tracking # 1z0064f20393830037. This package was physically scanned onto a truck Monday Feb. 25th. 2008 and never appeared again. The package was 75 pounds and measured 34x34x6. This was for my last big customer. In the past UPS has caused me to lose other big customers due to their ineptness. The best part of this is neither the center manager or the ssr have the guts to come into to speak to me or examine the other packages in the shipment of five(I received only four). The only way to save my business is for them to come and pay for the lost package either today or tomorrow so I can save my customer. If I follow UPS procedure then I have to fill out cvlaim work and wait for payment from their insurance company if they approve the claim. This process takes anywhere from three to five weeks. In that time all I have is a disgruntled excustomer. I will not tolerate center managers with attitudes or ssrs and their managers who have attitude problems and will not face me one on one. Since I am not getting paid for this shipment I will not have funds to pay UPS and other bills. This is not the first time the center in Uniondale has caused problems for me, but I am now going back to basics and handling this my own way unless you or MBE intervene in a timely manner. The only thing that UPS has done right is their PCA team who show concern and do their jobs.please let me know if there is a UPS corporate contact for UPS.

Stuart Berk

Store#5603

Phone 516-794-1540

EXHIBIT N
Pg 113

# EXHIBIT O

# Fees for a Resale/Transfer of Ownership of a The UPS Store

(This outlines does not include fees from any attorney, operating costs of your future center, or prorated/prepaid Seller' s operating fees that extend into your future ownership)

**Please note:**

The following expenses will need to be included in the total cost of the transfer:

| | |
|---|---|
| 1. Purchase Price | $$$$ |
| 2. Required upgrades – The Seller should have a Transfer Upgrade Review or Agreement for your review. Later in this process, you will need to sign your Transfer Upgrade Agreement (TUA). This TUA reflects any upgrades that will be required and the estimated cost of those upgrades. | $$$$ |
| 3. Annual Tech Fee (Item #6 in the FOC) | $795 (may be prorated) ($695 MCO) |
| 4. Transfer Fee (Item #6 in the FOC) | $5,000 |
| 5. Processing Fee (Item #6 in the FOC) | $1,000 (with a Finder' s Fee in effect) or $4,000 (without a Finder' s Fee in effect) |
| 6. Renewal Fee (Item #6 in the FOC) | Approx. $750 per " used" year needed to bring the Center' s franchise back up to a full 10 year term. |
| 7. Training Fee (Item #5 in the FOC) | $4,500 for all three phases (for one person). This is required for the manager/operator of the store. |
| 8. Second Attendee Training Fee (Item #5 in the FOC) | $3,250 for all three phases for any additional attendee. Additional attendees can participate in any of the phases with the first franchisee, and are not required to attend all phases. |
| 9. Travel to Training (Item #7 in the FOC) | Approx: $3,000 - $4,000 |
| 10. MCO Training (If applicable) | $525 |
| 11. Lease re-write fee (Fixtures, other) (if applicable) | $250 |
| 12. Lease re-write fee (POS/CMS) (if applicable) | $75 |
| 13. Center Development Fee (Item #7 in the FOC) | 20% of the local labor and local materials cost for upgrades |
| 14. Escrow Attorney | Approx: $1,000.00 - $1,200.00 |

**Credits at closing:**

| Seller | Buyer |
|---|---|
| **CURE**<br>$500 | **Initial Application Fee**<br>$7,500.00 (New Franchisee)<br>or<br>$3,750.00 (MCO Franchisee) |

At closing, all unpaid additional fees (points 2-13, where applicable) will be part of our Final Demand Letter. The Final Demand letter is sent to your attorney/Escrow Company prior to closing. The credit for the CURE and the buyer' s IAF will be credited.

Please contact me should you have any questions. Your " Franchise Funding Plan" and the Contract of Sale will need to reflect the total cost of this purchase.

EXHIBIT O

Pg 114

# NON-EXCLUSIVE FINDER'S AGREEMENT

This non-exclusive finder's agreement ("Agreement") is entered into between Mail Boxes Etc., Inc. ("MBE") and the Mail Boxes Etc.® or The UPS Store® franchise owner identified below ("Seller"). This Agreement becomes effective upon the date of its counter-signature by MBE ("Effective Date").

## BACKGROUND & DEFINITIONS

A. Each year MBE spends significant financial and human resources on targeted advertising and marketing of it's The UPS Store opportunity in order to attract and identify qualified persons who are interested in purchasing new franchise rights at newly constructed Center locations. MBE's targeted franchisee advertising and marketing campaign includes Internet ads, newspaper ads, magazine ads, trade shows, seminars and in-Center referral reward programs.

B. Except for the prospective purchaser(s) listed on Exhibit "A" (if any) that Seller has been working with prior to the execution of this Agreement, for all purposes of this Agreement MBE's "Lead" means a person that contacts, or has been contacted by, MBE (including any authorized representative or affiliate of MBE) in connection with the possibility of that person's purchasing: (1) a new The UPS Store franchise at a newly constructed Center, and/or (2) a existing The UPS Store or Mail Boxes Etc. franchised Center. Seller acknowledges: (a) that this "contact" may be in person, in writing or via telephone, and (b) that a person (except for those listed on Exhibit "A") shall be considered an MBE "Lead" under this Agreement even where such person had been in communication with Seller before they had been in communication with MBE.

C. Seller understands and acknowledges that MBE is not legally or otherwise obligated to share its Leads with Seller or with any other owner of an existing franchised Center.

D. Seller seeks to sell the assets of its Center # ________ ("Seller's Center") and assign its corresponding franchise and premises lease rights to a qualified third party purchaser ("Transferee"). Seller acknowledges that it is not required to enter into this Agreement with MBE unless Seller seeks (as it now does) to consider selling Seller's Center to one of MBE's Leads.

E. Seller acknowledges that MBE will not: (1) act as a fiduciary or as a broker to Seller under this Agreement, nor (2) undertake any standard broker duties such as advertising Seller's Center, establish the sales price for the Seller's Center's or otherwise assist in the negotiation of the purchase and sale terms and conditions for Seller's Center.

F. MBE strongly suggests that Seller retain the services of an attorney and an accountant in connection with the sale of Seller's Center.



EXHIBIT O
pg 115

**MBE AND SELLER AGREE AS FOLLOWS:**

1. Seller promises to pay MBE a "Finder's Fee" that is equal to the greater of Eleven Thousand Nine Hundred and Eighty Dollars ($11,980.00) or ten percent (10%) of the sales price of Seller's Center, only if the fee criteria described in paragraph three (3) below is satisfied.

2. Such fee shall be payable in full to MBE at the time of the Seller's Center's escrow closing and shall be deducted from the escrowed purchase proceeds. Financing or other terms and conditions agreed to between Seller and Transferee shall not affect the amount or timing of this Finder's Fee payment obligation.

3. The Finder's Fee shall be earned by MBE if and when MBE determines that the Transferee is a "Lead" of MBE, as defined above in paragraph "B".

4. The term of this Agreement shall remain in effect until such time as either party provides the other party thirty (30) days prior written notice of termination (for any or no reason) via UPS Next Day Air. However, so long as the Transferee was a Lead prior to the termination of this Agreement, Seller shall be obligated to pay a Finder's Fee to MBE even if: (a) Seller's and Transferee's purchase and sale agreement is entered into after the termination of this Agreement, and/or (b) the sale (escrow closing) of Seller's Center to such Transferee occurs after the termination of this Agreement.

5. Seller will be deemed to have sold Seller's Center whenever there is a change in the controlling ownership interest in the franchise rights associated with Seller's Center. In other words, Seller will not be obligated to pay a Finder's Fee to MBE if and when Seller sells (with MBE's approval) less than a controlling ownership interest in Seller's Center to a third party buyer.

6. Seller acknowledges that: (a) MBE may submit this Agreement to any escrow opened to facilitate the sale of Seller's Center, and (b) if the Finder's Fee is payable in accordance with the terms and conditions of this Agreement, then this Agreement shall be deemed to be Seller's irrevocable instructions to the escrow officer that the Finder's Fee must be paid by to MBE from the escrowed purchase proceeds.

7. Seller acknowledges the sale of Seller's Center must satisfy all of the transfer-related terms and conditions set forth in Seller's Franchise Agreement with MBE, including: (a) full compliance with MBE's transfer process, (b) MBE's consent to the proposed Transferee, and (c) payment of all transfer-related fees and other monies that are due and owing to MBE and to other third parties (local ad co-op, UPS, secured creditors, etc.)

8. Seller agrees to cooperate in good faith with MBE in connection with any efforts that MBE may (but is not required to) take to introduce Leads to Seller. Without limitation, this cooperation includes: (a) making Seller and Seller's Center available at reasonable times for visits from any of MBE's Leads, and (b) providing whatever financial and other information concerning Seller's Center that any Lead may reasonably request. This information may include, but not be limited to, Sellers: (i) profit and loss statements, (ii) royalty reports submitted to MBE, (iii) equipment inventory, including any equipment leases, (iv) retail space lease information, and (v) any financial analysis package prepared with respect to Seller's Center.



EXHIBIT O
Pg 116

9. Seller hereby authorizes MBE to release to any Lead that has expressed an interest in purchasing Seller's Center any and all information that Seller has provided to MBE regarding the operation and performance of Seller's Center.

10. Seller acknowledges that it is solely responsible for the accuracy of any financial and other information concerning Seller's Center that: (a) is given by Seller directly to any Lead, and (b) Seller has authorized MBE to provide to any Lead. Seller further acknowledges that: (i) MBE will not perform any audit or verification or otherwise revise, change or alter the information provided by Seller, and (ii) MBE will disclose to its Lead(s) that this information is strictly the representation of Seller, and (iii) MBE does not assume any responsibility whatsoever regarding the accuracy, completeness or reliability of Seller's information. MBE's Leads shall have the right to initiate reasonable efforts to verify the accuracy of information provided to them and Seller shall cooperate and assist in all such efforts.

11. Seller acknowledges that MBE cannot and will not negotiate the terms and conditions of sale of Seller's Center. Seller acknowledges that MBE represents neither the Seller nor any of MBE's Leads in agency capacity and that MBE is not a licensed business broker or real estate broker. Seller acknowledges that MBE is not acting as Seller's fiduciary and that MBE has not acted as a business, accounting, legal or tax advisor for Seller in any capacity. Seller shall negotiate and conclude the terms and conditions of the sale of Seller's Center either by itself and/or with properly licensed professional advisors such as an attorney, and/or accountant.

12. Seller agrees to indemnify, defend and hold harmless MBE, its officers, directors, agents, employees and affiliates from any claims, liabilities, actions, damages, or costs (including attorney's fees) arising out of or in any way connected with this Agreement or the sale of Seller's Center.

13. This Agreement supersedes any and all other understandings and agreements, either oral or written between the parties with respect to the subject matter hereof. However, nothing in this Agreement will limit or otherwise amend any of Seller's and MBE's rights and duties owed to each other under the Franchise Agreement associated with Seller's Center.

14. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not included herein, and that no agreement, statement or promise not contained in this Agreement shall be valid or binding. Any modifications of this Agreement shall be effective only if in writing and signed by both parties.

15. This Agreement shall be governed and construed in accordance with the laws of the State of California. Any dispute arising or relating to this Agreement will be resolved as set forth in the Seller's Franchise Agreement and such dispute resolution provisions will survive the sale of Seller's Center.

EXHIBIT O
pg 117

**<u>AGREED TO AND ACCEPTED BY</u>:**

**SELLER of Center #___________:**

1. **If Seller is a Sole Proprietor:**

   a. **Seller's Printed Name:** ______________________________

   b. **Seller's Signature:** ______________________________

   c. **Seller's Date of Signature:** ______________________________

2. **If Seller is a corporation, LLC, partnership or other legal entity:**

   a. **Printed Name of Legal Entity:** ______________________________

   b. **Printed Name of Person Signing:** ______________________________

   c. **Title of Person Signing:** ______________________________

   d. **Signature:** ______________________________

   e. **Date of Signature:** ______________________________

**MAIL BOXES ETC, INC. ("MBE")**

a. **Printed Name of Person Signing on behalf of MBE:** ______________________________

b. **Title of Person Signing:** ______________________________

c. **Signature:** ______________________________

*d.* ***Signature Date:** ______________, **20**____ **** Effective Date of this Agreement***

EXHIBIT O
Pg 118

**EXHIBIT "A" TO NON-EXCLUSIVE FINDER'S AGREEMENT**

List of the prospective purchaser(s) that Seller has been working with prior to the execution of this Agreement that shall not be deemed to be a "Lead" for purposes of this Agreement and shall not generate a Finder's Fee if they purchase Seller's Center.

EXHIBIT O
Pg 119

There are many steps that need to be accomplished as you prepare to sell you business. The following checklist in intended to help you navigate through this Phase I of the process.

<u>Check once complete</u>

□ Ensure your Profit and Loss Statements are current in Financial Planner

- The first thing a prospective buyer, and their financier, will want to see are our current P&L's for your center. You will need to ensure your financial statements are in order and presentable. If needed, and Accountant can help you get everything in order.

- In addition, your Center financials for a two year time period or the length of time you have owned the center, whichever is less, must be entered in Financial Planner in order for the center to be allowed to transfer. Your Area Representative can assist you in ensuring your information is in and current in Financial Planner.

□ Prepare a business overview for prospective buyers

- It is important that you spend some time developing a presentation tool to hand to prospective buyers.
- For the best effect, this should be an attractive, professional piece. Show off your store's document service capabilities by including a color picture of your store, color charts and graphs, and a professional bind – After all, you are a document services expert.
- Include important information about the store and be clear about why your store is such a strong opportunity. Some suggested topics include:
  - Overview/History
    - When did you open your store
    - What geographic area does your store serve
    - Who is your customer base
    - Include floor plan
  - Location/Shopping Center Information
    - When did the shopping center open
    - Who are some of the major traffic-generating co-tenants (Anchors, Starbucks, etc.)
    - What are the details associated with your current lease
  - Structure
    - Who manages the Center on a daily basis
    - What kind of managerial support do you have in place
    - How many employees currently work in your Center
  - Market conditions – demographics
    - What do the market demographics look like
    - Are there any planned infrastructure improvements that may affect the value of your store (Planned shopping centers, housing developments, freeway access, etc)
  - Physical assets
    - Owned and leased equipment
    - Store fixtures and mailboxes
    - Product inventory
  - Financial statements
    - Profit and Loss
    - Balance Sheet
    - Performance charts/graphs
  - Miscellaneous

EXHIBIT O
Pg 120

- ☐ Decide how to sell your Center

  There are different ways to find a buyer for your store, from enlisting the aid of a broker to going it alone. Because the more time you spend on selling your business, the less time you have to run it, MBE can also assist you in finding a qualified buyer to purchase your business. The benefits of enlisting the assistance of MBE by signing up on our Non-Exclusive Finders Agreement include:

  - Our development representatives have access to an existing lead base of interested parties – We receive over 40,000 domestic leads annually.
  - Pre-qualification of prospective franchisees. You don't have to waist time talking to buyers who may not qualify to purchase your store. We can send you buyers who meet MBE's qualification criteria
  - For signing up with us under our Non-Exclusive Finders Agreement you will receive a $3,000.00 discount on the Processing Fee when you sell your center.

A copy of the Non-Exclusive Finders Agreement has been included in this folder for your review. If you have any questions about this agreement, your local representative would be happy to answer them for you.

- ☐ Complete and submit CURE to establish upgrade requirements and costs

  - Notify your area representative and they will assist you in beginning the CURE process.
    - Upon submission of the CURE to MBE you will be required to pay a $500.00 Upgrade Review Fee. This will be EFT'd from your designated account upon receipt of the completed CURE package.
  - o Once the CURE is completed you will be notified of the upgrades that will be required at the time of purchase
  - Important note: established upgrades are valid for a six-month period of time. If you need more time to find a buyer and close on your sale,, your CURE will need to be re-reviewed

EXHIBIT O
Pg 122

- Set a reasonable sales price based on the following:

  - Consult with your Accountant and your Lender (or a local lender), who have expertise in helping to assess values of existing franchised businesses.

  - Attempt to ascertain what valuation factors (if any) may be unique the local market where your Center is located. Examples of such factors include, but are not limited to: local demographics, local growth trends, supply and demand for the products and services sold by your Center in light of the unique characteristics of your local economy, as well as the quality and quantity of local competitors.

  - Although the following may not be appropriate or desirable for the sale of your Center, some Franchisees use this valuation guideline: the Center's EBITA multiplied by 3.5 to 4.5.

  - It is important to note that the Transfer Upgrade Agreement (Exhibit H to the current Franchise Agreement) requires that **the buyer is solely responsible for all Center upgrades required by MBE**. The buyer will likely want to factor this requirement into any price that is negotiated for the Center's assets including its franchise rights.

  - Consider associated fees:

    - Transfer Fee – Amount specified in seller's Franchise Agreement. The maximum amount specified is $5,000.00.

    - Processing Fee – Amount specified in the seller's Franchise Agreement. If silent, then this fee reverts to specified amount in current Franchise Agreement ($4,000.00)
      - If the seller has signed a Finder's Agreement with "MBE" or the Area Office, the processing fee will be reduced to $1,000.00.

    - Training Fees
      - In Store Experience I and III Training - $2,000.00 for each trainee.
      - The UPS Store University - $2,500 for the first trainee and $1,250.00 for each additional trainee.

MBE makes no representation or warranty to you that the above valuation guideline would make sense or would be appropriate when applied to the sale of your Center's assets, including franchise rights.

This brief guideline was designed to help you, the seller, understand the preparation needed with the transfer of your center. Your Area Office will assist you and your buyer with all of the details throughout the process to make the Transfer of your center as streamlined as possible.

In addition to the information above there are a few resources on the Internet that may be helpful:

www.dinkytown.com/java/BusinessValuation.html
for a business valuation calculator
www.sba.gov/smallbusinessplanner/exit/sellyour business/index.html
additional information on selling your business
www.toolkit.cch.com

EXHIBIT O
Pg 123