PAUL A. REYNOLDS (Bar No. 179656)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*Admitted Pro Hac Vice*)
PETER M. ELLIS (*Admitted Pro Hac Vice*)
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60610
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Plaintiff
**MAIL BOXES ETC., INC.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAIL BOXES ETC., INC.,**<br>**Plaintiff,**<br>**v.**<br>**STUPS, INC. and STUART BERK,**<br>**Defendants.** | Case No. 3:08-CV-00491-JAH-POR<br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STUPS INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br>Date: April 11, 2008<br>Time: 9:30 a.m.<br>Judge: Hon. John A. Houston<br>Place: Courtroom 11<br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

I. IN ORDER TO PREVAIL TO PREVAIL ON THEIR MOTION FOR TRO, DEFENDANTS MUST SATISFY HEIGHTENED EVIDENTIARY AND LEGAL STANDARDS BECAUSE THEY SEEK MANDATORY RELIEF .......... 2

II. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .......... 3

A. DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT MBE WRONGFULLY TERMINATED THEIR FRANCHISE .......... 3

1. Mr. Berk's Violent Threat To "Blow Up" A UPS Customer Center and "Handle" A UPS Employee Reflected Materially And Unfavorably Upon The Operation And Reputation Of His Franchise And MBE's Franchise System As A Whole .......... 5

2. MBE Did Not Terminate Stups On A Pretextual Basis, and Pretext Alone Cannot Support A Wrongful Termination Claim. .......... 8

B. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THEIR REQUESTED RELIEF IS BARRED BY THE DOCTRINE OF UNCLEAN HANDS .......... 9

C. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THEIR REQUESTED RELIEF IS BARRED BY PUBLIC POLICY .......... 11

III. DEFENDANTS CANNOT CLEARLY ESTABLISH EXTREME IRREPARABLE INJURY BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW .......... 14

IV. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN FAVOR OF MBE .......... 15

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

## CASES

*Anderson v. United States*, 612 F.2d 1112 (9th Cir. 1979)....3

*AT&T Corp. v. Vision One Security Sys.*, No. 95-0565, 1995 U.S. Dist. LEXIS 11279 (S.D. Cal. Jul. 27, 1995)....14

*Bailey v. Clovis Unified Sch. Dist.*, No. 08-CV-0146, 2008 U.S. Dist. LEXIS 10347 (E.D. Cal. Feb. 12, 2008)....2

*Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979 (D. Ariz. 2007)....15

*Burger King Corp. v. Agad*, 911 F. Supp. 1499 (S.D. Fla. 1995)....12

*Burger King Corp. v. E-Z Eating 8th Corp.*, No. 07-20181-CIV, 2008 U.S. Dist. LEXIS 9831 (S.D. Fla. Feb. 11, 2008)....12

*Burger King Corp. v. Hall*, 770 F. Supp. 633 (S.D. Fla. 1991)....14

*Cent. Jersey Freightliner v. Freightliner Corp.*, 987 F. Supp. 289 (D.N.J. 1997)....15

*Daniels Cablevision, Inc. v. San Elijo Ranch, Inc.*, 158 F. Supp. 2d 1178, 1180 (S.D. Cal. 2001)....3

*Dominguez v. Andrew Corp.*, No. C 07-4679, 2007 U.S. Dist. LEXIS 91062 (N.D. Cal. Dec. 4, 2007)....13

*Dunkin' Donuts Inc. v. Liu*, 79 Fed. Appx. 543 (3d Cir. 2003)....9

*Dunkin' Donuts, Inc. v. Liu*, No. 99-3344, 2000 U.S. Dist. LEXIS 18388 (E.D. Pa. Dec. 21, 2000)....15

*Dunkin' Donuts, Inc. v. Martinez*, No. 01-3589-CIV, 2003 U.S. Dist. LEXIS 2694 (S.D. Fla. Feb. 21, 2003)....6, 8

*Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585 (W.D. Pa. 1971)....6

*Goldfarb v. Robb Report, Inc.*, 655 N.E.2d 211 (Ohio Ct. App. 1995)....12

*Kendall-Jackson Winery, Ltd. v. Superior Court of Stanislaus County*, 76 Cal. App. 4th 970 (5th Dist. 1999)....9, 10

*Lutz v. Chrysler Corp.*, No. 73 CV 183, 1973 U.S. Dist. LEXIS 11778 (W.D. Mo. Sept. 25, 1973)....2

*Major Oldsmobile v. GMC*, No. 95-7595, 1996 U.S. App. LEXIS 11443 (2d Cir. May 17, 1996)....9

*McCormick v. Cohn*, No. CV 90-0323 H, 1992 U.S. Dist. LEXIS 21187 (S.D. Cal. Aug. 3, 1992)....11

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998)....9

*Midas Int'l Corp. v. T & M Unlimited, Inc.*, No. 00-CV-0899, 2000 U.S. Dist. LEXIS 16978 (W.D.N.Y. Nov. 16, 2000) .......... 8

*Nat'l Resource Defense Council, Inc. v. Envt'l Prot. Agency*, 966 F.2d 1292 (9th Cir. 1992) .......... 12

*N. Am. Fin. Group, Ltd. v. S.M.R. Enters., Inc.*, 583 F. Supp. 691 (N.D. Ill. 1984) .......... 12

*Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies*, 970 F.2d 273 (7th Cir. 1992) .......... 2, 10, 13

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) .......... 9

*Refinement Int'l Co. v. Eastbourne N.V.*, 815 F. Supp. 738 (S.D.N.Y. 1993) .......... 9

*Romacorp, Inc. v. T.R. Acquisition Corp.*, No. 93 Civ. 5394, 1993 U.S. Dist. LEXIS 16923 (S.D.N.Y. Dec. 1, 1993) .......... 8, 15

*7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 352 (D. Md. 2004) .......... 8

*Shieh v. Kumon N. Am., Inc.*, No. C 05-5285, 2006 U.S. Dist. LEXIS 57977 (N.D. Cal. Jan. 6, 2006) .......... 15

*Stanley v. Univ. of S. California*, 13 F.3d 1313 (9th Cir. 1994) .......... 2, 3

*Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*, 255 Cal. App. 2d 300, 304 (4th Dist. 1967) .......... 12, 13, 14

*Tyson v. Cayton*, No. 88 Civ. 8398, 1990 U.S. Dist. LEXIS 12602 (S.D.N.Y. 1990) .......... 13

*United States v. Wiggins*, 146 Fed. Appx. 437 (11th Cir. 2005) .......... 6

*United States v. Whiffen*, 121 F.3d 18 (1st Cir. 1997) .......... 6

*Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520 (1st Dist. 1991) .......... 11

*Wrobel v. S.L. Pope & Assocs.*, No. 07-cv-1591, 2007 U.S. Dist. LEXIS 59779 (S.D. Cal. Aug. 15, 2007) .......... 3

## STATUTES

CAL. BUS. & PROF. CODE § 20021 .......... 4

CAL. CIV. CODE § 3390 .......... 11

CAL. CIV. CODE § 3423(e) .......... 13

18 U.S.C. § 844(e) .......... 6

18 U.S.C. § 875 .......... 6

Plaintiff and Counter-Defendant Mail Boxes Etc., Inc. ("MBE"), by and through its attorneys, DLA Piper US LLP, hereby submits the following Memorandum in Opposition to Defendant and Counter-Claimant Stups, Inc. ("Stups") and Stuart Berk's (collectively "Defendants") Motion for Temporary Restraining Order ("TRO"), and states as follows:

## INTRODUCTION

On March 14, 2008, MBE was forced to terminate Stuart Berk's franchise, Stups, as a result of his unconscionable, terroristic threat to "blow up" a UPS Customer Center and "handle" a UPS Sales Representative. These reprehensible threats did not occur in a vacuum; rather, they were the culmination of Mr. Berk's long and sordid history of abusive behavior directed towards both MBE and UPS personnel. In the face of such credible threats of catastrophic violence to its employees and to the public at large, MBE could not afford to adopt a wait-and-see approach. Indeed, no responsible business could, or would, have taken any action short of immediate termination of the offending franchise.

Mr. Berk now asks this Court to save him from the inevitable consequences of his own reprehensible behavior by reinstating the irreparably broken franchise relationship between MBE and Stups. He asks this Court to expend its scarce resources to monitor and supervise a relationship that, because of Mr. Berk's violent and extortionate conduct, is in total disrepair. MBE's on-the-ground employees are justifiably unwilling to work with Mr. Berk. Further, as Mr. Berk's counterclaims demonstrate, from his perspective, no issue - whether it is his required attendance at a 5-hour meeting or purported disparaging comments by a District Consultant about Mr. Berk's caring for his mother - is too trivial for this Court to adjudicate. Given the highly contentious relationship between the parties, this Court will be forced to hear innumerable real and imagined disputes on a continuous basis over the remaining seven and one-half years of the Franchise Agreement. The equities in this case simply do not warrant such extraordinary efforts.

## I. IN ORDER TO PREVAIL ON THEIR MOTION FOR TRO, DEFENDANTS MUST SATISFY HEIGHTENED EVIDENTIARY AND LEGAL STANDARDS BECAUSE THEY SEEK MANDATORY RELIEF.

In their TRO Brief, Defendants invite the Court to evaluate their Motion on the basis of the ordinary preliminary injunctive relief standards, which are applicable where a party seeks a prohibitory injunction. (Counter-Cl. Stups, Inc's Mem. Of P. & A. In Supp. Of Mot'n for TRO ("Def.'s TRO Br.") at p. 13.) This Court should decline Defendants' invitation because they seek an extraordinary mandatory injunction. Defendants' attempt to obfuscate the nature of their requested relief by cloaking it in vague generality: "an order … restraining … [MBE] from doing any act or omission which interferes with Stups' franchise and license rights and benefits as set forth in, and resulting from, the parties' Franchise Agreement executed on July 6, 2005 and July 25, 2005." (Def.'s TRO Br. at p. 2.) But given the undisputed fact that MBE terminated the Stups franchise on March 14, 2008, Defendants requested relief would require a mandatory order affirmatively requiring MBE to reinstate Stups' rights under the Franchise Agreement, restore Stups' access to the various MBE franchise systems and networks, and comply with MBE's various obligations under the Agreement. See Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd., 970 F.2d 273, 277-78 (7th Cir. 1992) (contrasting franchisor's request for negative injunction against trademark infringement with franchisee's request for affirmative injunction seeking restoration of its terminated franchise rights); Stanley v. Univ. of S. California, 13 F.3d 1313, 1320 (9th Cir. 1994) (order requiring employer to rehire employee whose contract expired is mandatory relief); Bailey v. Clovis Unified Sch. Dist., No. 08-CV-0146, 2008 U.S. Dist. LEXIS 10347, at **7-9 (E.D. Cal. Feb. 12, 2008) (order requiring school district to lift its two-month suspension of student basketball player and to reinstate him to his position on the team is mandatory relief); Lutz v. Chrysler Corp., No. 73 CV 183, 1973 U.S. Dist. LEXIS 11778, at *2 (W.D. Mo. Sept. 25, 1973) (order requiring reinstatement of automobile

dealership franchise agreement is mandatory relief).

Courts in the Ninth Circuit highly disfavor and rarely issue the mandatory injunctive relief requested by the Defendants. See Bailey, 2008 U.S. Dist. LEXIS 10347, at **7-8. Defendants cannot prevail on their Motion for TRO unless they prove a "clear or substantial" (rather than probable) likelihood of success on their wrongful termination claim. See Daniels Cablevision, Inc. v. San Elijo Ranch, Inc., 158 F. Supp. 2d 1178, 1180 (S.D. Cal. 2001) (holding that party seeking mandatory injunction must establish "clear" or "substantial" likelihood of success).[1] Defendants must also establish "extreme or very serious" (rather than the mere possibility of) irreparable harm. Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979) (holding that party seeking mandatory injunction must establish possibility of "extreme or very serious" irreparable injury). In order to satisfy these heightened standards, Defendants must demonstrate that both the law and the facts are "clearly" in their favor. Stanley, 13 F.3d at 1320. Defendants' Motion for TRO falls under the weight of this heavy burden.

## II. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT MBE WRONGFULLY TERMINATED THE STUPS FRANCHISE.

MBE had good cause to terminate Stups' franchise without notice or opportunity to cure under both the Franchise Agreement and applicable California law. Section 12.4(k) of the Franchise Agreement permits immediate termination of a franchise if the franchisee's conduct reflects in a materially unfavorable way upon the reputation and operation of the franchisee's business or the system generally:

---

[1] Preliminary injunction standards are equally applicable on a motion for TRO. Wrobel v. S.L. Pope & Assocs., No. 07-cv-1591, 2007 U.S. Dist. LEXIS 59779, at *2 (S.D. Cal. Aug. 15, 2007).

> Franchisee shall be deemed to be in material default and MBE may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by MBE of the occurrence of any of the following events: ... if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or MBE's rights therein, **takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon MBE's network of Centers generally ... .**

(Franchise Agreement at ¶ 12.4(k).) (emphasis added). Section 12.4(k) is consistent with and substantially identical to the California Franchise Relations Act ("CFRA") in this regard:

> If during the period in which the franchise is in effect, there occurs any of the following events which is relevant to the franchise, immediate notice of termination without an opportunity to cure, shall be deemed reasonable: ... (d) The franchisee makes any material representations relating to the acquisition of the franchise business **or the franchisee engages in conduct which reflects materially and unfavorably upon the operation and reputation of the franchise business or system.**

CAL. BUS. & PROF. CODE § 20021(d) (emphasis added).

Consistent with his unrelenting efforts to run from the consequences of his own conduct, Mr. Berk now resorts to misrepresenting the CFRA. Incredibly, in their TRO Brief, Defendants cite **every** provision of Section 20021 of the CFRA **except for** the operative language of Section 20021(d) highlighted above:

> Business and Professions Code Section 20021 limits the instances in which a franchisor may terminate the franchise without notice and opportunity to cure to eleven circumstances: (a) bankruptcy; (b) abandonment of the franchise; (c) mutual agreement to terminate; (d) if the franchisee made material misrepresentations in acquiring the franchise; (e) the franchisee's failure to comply with laws governing the operation of the business after being given ten days' notice; (f) multiple non-compliances with the franchise agreement for which notice has previously been given; (g) repeated failures to comply with franchise agreement requirements; (h) the seizure of the business or business premises; (i) conviction of a felony or other crime relevant to the operation of the franchise; (j) the failure to pay franchise fees after the giving of a five day

> notice; and (k) the continued operation of the franchise will result in imminent danger to public health or safety.

(Def.'s TRO Br. at p. 11.) After omitting from their recitation of the statute the relevant provision of the CFRA, Defendants then unabashedly assert that "[n]one of those circumstances is applicable to the facts of this case." (Id.) Mr. Berk's mischaracterization of the law, while inexcusable, is borne of the recognition that his terroristic threats of violence directly and unequivocally breached Section 12.4(k) of the Franchise Agreement as well as Section 20021(d) of the CFRA.

**1. Mr. Berk's Violent Threat To "Blow Up" A UPS Customer Center and "Handle" A UPS Employee Reflected Materially And Unfavorably Upon The Operation And Reputation Of His Franchise And MBE's Franchise System As A Whole.**

On or about February 25, 2008, Mr. Berk called the UPS Customer Service Call Center in order to locate one of his customer's lost packages. (Chatman Aff. at ¶ 3.) When the customer service representative, Latasha Chatman, informed Mr. Berk that UPS personnel were unable to locate the package at the UPS Customer Center in Nassau, New York, Mr. Berk spiraled into an uncontrollable rage. (Id. at ¶ 4 and Ex. A.) He threatened to "blow up" the UPS Customer Center unless his package was located. (Chatman Aff. at ¶ 4 and Ex. A; Mueller Decl. at ¶ 4; Hernandez Aff. I at ¶¶ 3-4.) Mr. Berk confirmed the seriousness of his threat by exclaiming that he was a very dangerous man. (Chatman Aff. at ¶ 4 and Ex. A.) And he further warned Ms. Chatman that he had invested $300,000 in the Stups franchise and that he was not going to let his family go down. (Id.) Finally, Mr. Berk demanded that a UPS Sales Representative, Jeff Malecki, be fired, and declared he would "handle" him as well. (Id.)

Mr. Berk's violent threats warranted immediate termination of the Franchise Agreement, without notice or opportunity to cure, pursuant to both the Franchise Agreement and the CFRA, because it "reflect[ed] materially and unfavorably upon the operation and reputation of the

Center at the Location" and "upon MBE's network of Centers generally." Franchise Agreement at ¶ 12.4(k); accord. CAL. BUS. & PROF. CODE § 20021(d). Berk's abhorrent conduct "undermine[d] the entire franchise relationship," "which is based on good faith and trust" and "seriously jeopardize[d] ... the essential integrity of the franchise system." See Dunkin' Donuts Inc. v. Martinez, No. 01-3589-CIV, 2003 U.S. Dist. LEXIS 2694, at *31 (S.D. Fla. Feb. 21, 2003) (holding that franchisee's violation of tax law was a sufficient basis for termination of the franchise agreement).[2] Having threatened to visit catastrophic harm upon UPS, Mr. Berk cannot now repair the irreversible damage that he has done to the franchise relationship between Stups and MBE. See Gateway Bottling, Inc. v. Dad's Rootbeer Co., 53 F.R.D. 585, 587 (W.D. Pa. 1971) (holding that franchisee officer's attempt to burn down franchisee's manufacturing facility constitutes "incurable" conduct).

In the immediate aftermath of Mr. Berk's bomb threat, MBE and UPS were required to dedicate substantial resources to investigate and address Mr. Berk's misconduct. (Hernandez Decl. II at *passim*.) MBE and UPS implemented certain security protocols directed exclusively towards Mr. Berk. (Mueller Decl. at ¶¶ 6-8; Schlessinger Decl. at ¶¶ 6-7.) MBE and UPS employees understandably now refuse to work with him. (Malecki Decl. at ¶¶ 7-8; Diorio Decl. at

---

2 Martinez *a fortiori* supports MBE's position because Berk committed substantially more serious crimes than the franchisee in that case. Berk's threat of violence constituted felony criminal conduct in violation of 18 U.S.C. § 844(e) and 18 U.S.C. §§ 875(b), (c), and (d). See United States v. Wiggins, 146 Fed. Appx. 437 (11th Cir. 2005) (affirming conviction under Section 844(e) for defendant's use of his cell phone to communicate a bomb threat to his employer); United States v. Whiffen, 121 F.3d 18 (1st Cir. 1997) (affirming conviction under Section 875 for defendant's phone calls in which he threatened to make "the building go boom" and to "blow up their building" unless the victims ceased their debt collection efforts).

¶¶ 6-7; Mazzola Decl. at ¶¶ 5-6; Schlessinger Decl. at ¶ 8.) Mr. Berk's extortionate threats of violence obviously destroyed his reputation for integrity and moral character in the MBE and UPS workplace communities. (Malecki Aff. at ¶ 6; Schlessinger Decl. at ¶ 8.)

Furthermore, Mr. Berk's violent threats have jeopardized the availability of shipping services at Stups' franchise location. UPS has a zero tolerance policy against workplace violence, "which applies not only to everyone at UPS, but also to those with whom [UPS] come[s] in contact with during the course of [its] work." (Mueller Decl. at *passim*.) UPS specifically prohibits "violence related conduct including … threatening comments [and] intimidation." (Id. at Ex. A.) Pursuant to UPS policy, "[a]ny comments or behavior that reasonably could be interpreted as intent to do harm to employees, customers or property will be considered a threat." (Id. at Ex. A.) Mr. Berk's threats to "blow up" a UPS Customer Center and "handle" a UPS employee immediately disrupted MBE's ordinary business operations and irreversibly destroyed the Defendants' reputation as a *bona fide*, good faith franchisee.

In his TRO Brief, Mr. Berk contends that his terroristic threats did not violate Section 12.4(k) of the Franchise Agreement because they were not published to a third party. (Def.'s TRO Br. at p. 9.) Mr. Berk apparently believes that he can make terroristic threats with impunity so long as those threats remain in the "MBE/UPS family." (Id.) Mr. Berk's characterization of MBE and UPS as a singular "family" has no legal significance. MBE is Stups' franchisor, and MBE's parent, UPS, is Stups' third-party shipping vendor. Thus, when Mr. Berk, in a telephone call with Latasha Chatman, who herself is a third party employed by APAC, threatened to "blow up" a UPS facility and "handle" a UPS employee, he issued a threat to a third party. In any event, were MBE required to await widespread publication of Mr. Berk's bomb threat before terminating the Stups franchise, MBE would "be subject to even greater criticism and potential harm for knowingly ignoring, and thereby seeming to have condoned" Mr. Berk's despicable

conduct. See Martinez, 2003 U.S. Dist. LEXIS 2694 at *32.[3]

**2. MBE Did Not Terminate Stups On A Pretextual Basis, and Pretext Alone Cannot Support A Wrongful Termination Claim.**

Mr. Berk speculates, without any evidentiary support, that MBE seized upon his bomb threat as a means to eliminate a "thorn in its side." (Def.'s Opposition Br. at p. 22) The notion that threatening violence would not result in immediate termination is an absurdity. In any event, because MBE had legitimate contractual bases for its termination of the Stups franchise, MBE's purported ulterior motives are of no moment. Midas Int'l Corp. v. T & M Unlimited, Inc., No. 00-CV-0899, 2000 U.S. Dist. LEXIS 16978, at *13 (W.D.N.Y. Nov. 16, 2000) ("Where there are proper grounds for the termination of a franchise agreement, any additional, improper, ulterior motivation is irrelevant."); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1309 (11th Cir.

---

[3] Defendants provide a laundry list of MBE's purported pre-termination breaches of the Franchise Agreement, ostensibly in an effort to excuse Stups' material breach of the Franchise Agreement by Mr. Berk's threats against UPS. (Def.'s TRO Br. at pp. 3-7.) MBE denies any wrongdoing in connection with Defendants' counter-claims. In any event, MBE's alleged pre-termination breaches of the Franchise Agreement do not excuse Mr. Berk's conduct. Romacorp, Inc. v. T.R. Acquisition Corp., No. 93 Civ. 5394, 1993 U.S. Dist. LEXIS 16923, at *36-37 (S.D.N.Y. Dec. 1, 1993) ("TRAC fails to distinguish a garden variety contract from a franchise agreement involving the use of trade names and marks. Moreover, ... *Depco* was stating 'the general rule absent intentions to the contrary.' That general rule is inapplicable where, as here, there is an express provision granting the franchisor the unilateral right to terminate in the event of the franchisee's breach."); 7-Eleven, Inc. v. McEvoy, 300 F. Supp. 352, 358 (D. Md. 2004) (noting that franchisee could not claim franchisor's alleged breaches to the agreement as an affirmative defense to his own breach).

1998) ("[I]t does not matter whether [the franchisor] also possessed an ulterior, improper motive for terminating the [] franchise agreement."); Major Oldsmobile v. GMC, No. 95-7595, 1996 U.S. App. LEXIS 11443, at **7-8 (2d Cir. May 17, 1996) ("As long as a party has the 'legal right to terminate its obligation under the contract, it is legally irrelevant whether [the party] was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract.'") (citing Refinement Int'l Co. v. Eastbourne N.V., 815 F. Supp. 738, 742 (S.D.N.Y. 1993)); Dunkin' Donuts Inc. v. Liu, 79 Fed. Appx. 543, 547 (3d Cir. 2003) ("[E]ven if [the franchisee] had produced sufficient evidence of [the franchisor's] ulterior motive, motivational analysis would have been irrelevant because [the franchisee's] non-payment constituted a material breach of the contract, which provided [the franchisor's] legitimate grounds for termination.")

### B. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THEIR REQUESTED RELIEF IS BARRED BY THE DOCTRINE OF UNCLEAN HANDS.

The doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945); see Kendall-Jackson Winery, Ltd. v. Superior Court of Stanislaus County, 76 Cal. App. 4th 970, 978 (5th Dist. 1999) ("[A] plaintiff [must] act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.") It is unnecessary that the conduct be "of such a nature as to be punishable as a crime or as to justify legal proceedings of any character." Precision, 324 U.S. at 814. Instead, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor." Id.; see also Kendall-Jackson, 76 Cal. App. 4th at 979 (any conduct that "violates conscience, or good faith, or

other equitable standards of conduct, is sufficient cause to invoke the doctrine."); see generally Original Great Am. Chocolate Cookie Co., 970 F.2d at 282 (holding that plaintiffs' unclean hands barred issuance of a preliminary injunction, as plaintiffs "should not be rewarded with a preliminary injunction for their putting their franchisor to the expense of suing them for trademark infringement.").

To characterize Mr. Berk's hands as merely unclean is to grossly understate the severity of his contemptible conduct. Mr. Berk made outrageous, violent threats against a UPS employee and a UPS facility in an effort to bully UPS into quickly locating a lost package. His bad faith, terroristic threats alone account for Mr. Berk's current situation. This Court should be loathe to rescue Mr. Berk from his own conduct by reinstating him as an MBE franchise and monitoring every aspect of their future relationship.

Moreover, to this day, Mr. Berk has failed to take responsibility for his reprehensible conduct. To the contrary, Mr. Berk has sought to mislead this Court through unconvincing, half-denials of MBE's allegations, misstatements of the law, and his efforts to keep voicemail evidence of his shocking behavior from the Court. Importantly, while Mr. Berk complains that MBE took his bomb threat out of context, he does not deny the fact that, during the same telephone call, he stated that: he is a dangerous man; he will not allow his family to go down; and he will "handle" Jeff Malecki while demanding that UPS terminate him. When they were made, these statements confirmed the seriousness of Mr. Berk's threat to "blow up" the UPS Customer Center. And now these same statements provide the context for and corroborate the bomb threat itself.

Mr. Berk has offered this Court two different, but equally nonsensical, explanations of his undisputed use of the phrase "blow up" with reference to the UPS Customer Center. In his March 23 Declaration, Mr. Berk asserted that he made the following statement: "I further noted that even

if the **distribution** center **were to be** blown up, UPS and I would still need to locate my customer's missing package." (Berk Decl. I at ¶ 12) (emphasis added). Only five days later and without explanation, in his March 28 Declaration, Mr. Berk modified his prior explanation, declaring: "I further noted that **I don't care** even if the center blows up, UPS and I would still need to locate my customer's missing package." (Berk Decl. II at ¶ 13) (emphasis added). While neither explanation is plausible, the latter declaration is a transparent effort to depersonalize the threat by suggesting Mr. Berk's ambivalence and, therefore, detachment from his threat to blow up the facility. Mr. Berk's duplicitous efforts to mislead the court about what he said further sully his hands and independently warrant the Court's denial of his requested equitable relief. See McCormick v. Cohn, No. CV 90-0323 H, 1992 U.S. Dist. LEXIS 21187, at *37 (S.D. Cal. Aug. 3, 1992) (revising verdict in favor of plaintiff, in part, because plaintiff's concealment of relevant documents constituted unclean hands).

### C. DEFENDANTS CANNOT CLEARLY ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THEIR REQUESTED RELIEF IS BARRED BY PUBLIC POLICY.

Public policy prohibits the enforcement of a personal services contract by specific performance because such relief would violate the Thirteenth Amendment's prohibition against involuntary servitude, impose upon a court the impossible task of passing judgment on the quality of performance, and reunite parties to a failed relationship. Woolley v. Embassy Suites, Inc., 227 Cal. App. 3d 1520, 1533 (1st Dist. 1991); see also CAL. CIV. CODE § 3390 ("The following obligations cannot be specifically enforced: An obligation to render personal service.") A franchise agreement is one such personal services contract that will not be enforced by specific performance:

> [T]here is absolutely no precedent for granting specific performance of a franchise contract. A franchise agreement ... is atleast partially a contract for personal services. The franchisee undertakes to conduct a business or sell a product or services in

> accordance with the methods and procedures prescribed by the franchisor and the franchisor undertakes to assist the franchisee through advertising, promotion, and other services. ... If specific performance were granted, the Court would be placed in the untenable situation of a long term supervisor, judging the quality of training and overseeing the breadth and efficacy of advertising. For that reason, it is hornbook law that a contract for personal services will not be specifically enforced as contrary to public policy.

N. Am. Fin. Group, Ltd. v. S.M.R. Enters., Inc., 583 F. Supp. 691, 699 (N.D. Ill. 1984); accord Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp., 255 Cal. App. 2d 300, 304 (4th Dist. 1967) (holding that an injunction prohibiting a manufacturer from breaching its contract with a distributor is barred by California statute prohibiting enforcement of personal services contracts by specific performance). See also Burger King Corp. v. E-Z Eating 8th Corp., No. 07-20181-CIV, 2008 U.S. Dist. LEXIS 9831, at *2 (S.D. Fla. Feb. 11, 2008) (holding that franchise agreement is a personal services contract for which specific performance is not an available remedy); Burger King Corp. v. Agad, 911 F. Supp. 1499, 1506-07 (S.D. Fla. 1995) (same); Goldfarb v. Robb Report, Inc., 655 N.E.2d 211, 219 (Ohio Ct. App. 1995) (denying franchisee's request for reinstatement of his franchise because "specific performance is not available in a contract for services").

As a related matter, in the absence of an extraordinary public policy interest, courts generally will not issue mandatory injunctive relief that requires continuous judicial supervision and oversight to ensure compliance. Nat'l Resource Defense Council, Inc. v. Envt'l Prot. Agency, 966 F.2d 1292, 1300 (9th Cir. 1992); Dominguez v. Andrew Corp., No. C 07-4679, 2007 U.S. Dist. LEXIS 91062, at *11 (N.D. Cal. Dec. 4, 2007). An injunction prohibiting breach of a franchise agreement implicates this very concern:

> A permanent injunction prohibiting a manufacturer from breaching its contract with a distributor will not be granted where the effect of the injunction would be to specifically enforce the dealership agreement requiring the manufacturer to sell its products to the

> dealer over an indefinite term, inasmuch as such a decree would impose upon the court the impossible task of supervising continuous performance by the parties; under such circumstances, the dealer should be denied equitable relief and left in a position where he may assert his legal rights under the contract.

Thayer Plymouth Ctr., Inc., 255 Cal. App. 2d at 304; see also Original Great Am. Chocolate Chip Cookie Co., 970 F. 2d at 277 (holding that injunction reinstating franchise agreement "imposes a continuing duty of supervision on the issuing court, and this can be a drain on scarce judicial resources."); Tyson v. Cayton, No. 88 Civ. 8398, 1990 U.S. Dist. LEXIS 12602, at **7-8 (S.D.N.Y. Sept. 26, 1990) ("Courts are chary of granting equitable relief where the result would be to compel two antagonistic parties to work together, particularly where the success of the relationship requires continuing cooperation and interwoven performance over a period of time.")

Although Defendants attempt to frame their requested relief as an injunction against MBE's alleged breaches of the Franchise Agreement, in reality, Defendants seek an order of specific performance requiring MBE to reinstate Stups' franchise rights and fully perform the balance of its various obligations under the Franchise Agreement. Notwithstanding its ambiguous pleading, Defendants cannot avoid the clear import of California public policy which prohibits equitable relief reinstating a franchise agreement. See Thayer Plymouth Ctr., Inc., 255 Cal. App. 2d at 304 (citing CAL. CIV. CODE § 3423(e)) ("An injunction cannot be granted to prevent the breach of a contract, the performance of which would not be specifically enforced.")

Accordingly, putting aside Defendants' inability to establish wrongful termination of the franchise agreement and their unclean hands, Defendants have **no** likelihood of securing their desired equitable relief, which is barred by public policy or, at the very least, highly disfavored. The Franchise Agreement is a personal services contract which requires MBE personnel to support Stups' training, advertising, sales, and operational efforts. (Franchise Agreement at ¶¶ 4.1, 4.2.) Moreover, the Record establishes that the relationship between Mr. Berk and both MBE

and UPS personnel is highly contentious. Were this Court to issue an injunction in Defendants' favor, it would be forced to continuously monitor, police, and administrate a bitter relationship between unwilling parties for up to seven and one-half years. Because an order reinstating the franchise relationship between Stups and MBE would in effect order specific performance of a personal services contract and place the Court squarely in the middle of innumerable and intractable business and personal conflicts between the parties, Defendants are not entitled to their requested mandatory injunctive relief.

## III. DEFENDANTS CANNOT CLEARLY ESTABLISH EXTREME IRREPARABLE INJURY BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW.

Defendants contend that MBE's allegedly wrongful termination of the Stups franchise has resulted in Stups' loss of business revenue and will eventually result in the unemployment of Stups' employees. (Def.'s TRO Br. at pp. 13-14.) As a matter of law, such injuries are not irreparable because a court can ascertain the amount of damages resulting from such injuries based on the historical economic performance of the franchise. Thayer Plymouth Ctr., Inc., 255 Cal. App. 2d at 306-7 (holding that damages resulting from wrongful franchise termination are ascertainable). And, therefore, money damages in this breach of contract action would adequately compensate Defendants for their purported losses. AT&T Corp. v. Vision One Security Sys., No. 95-0565, 1995 U.S. Dist. LEXIS 11279 at **18-19 (S.D. Cal. Jul. 27, 1995); see also Burger King Corp. v. Hall, 770 F. Supp. 633, 638 (S.D. Fla. 1991) ("As a matter of law, [] a terminated franchisee's remedy for wrongful termination is an action for money damages.")); Shieh v. Kumon N. Am., Inc., No. C 05-5285, 2006 U.S. Dist. LEXIS 57977, at *8 (N.D. Cal. Jan. 6, 2006) (holding that money damages are an adequate remedy for franchisee's wrongful termination claim); Best W. Int'l, Inc. v. Patel, 523 F. Supp. 2d 979, 985 (D. Ariz. 2007) (same; applying California law); Cent. Jersey Freightliner v. Freightliner Corp., 987 F. Supp. 289, 296 (D.N.J. 1997) (holding that loss of franchisee's revenues, livelihood, and investment compensable

with money damages); Romacorp, Inc., 1993 U.S. Dist. LEXIS 16923 at *37 ("As all of the franchise decisions point out, in the case of alleged breach by the franchisor, the franchisee's remedy is to sue for damages. . .")

## IV. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN FAVOR OF MBE.

Consistent with Mr. Berk's unwillingness to take any responsibility whatsoever for his own reprehensible conduct, in his TRO Brief, Mr. Berk does not even acknowledge the immediate harm suffered by MBE and UPS as a result of his unconscionable threats to "blow up" a UPS Customer Center and "handle" a UPS employee. As a result of Mr. Berk's outrageous behavior, MBE has endured considerable disruption to its franchise network and business. MBE was forced to activate its Threat Response Team and put specific security protocols in place to deal with the dangers posed by Mr. Berk. Both MBE and UPS employees are now justifiably unwilling to work with Mr. Berk. Through his abhorrent statements, Mr. Berk has not only impugned his own reputation, but he has also placed MBE's good name at risk. The consuming public, MBE's parent UPS, MBE's other franchisees, and MBE's employees will no doubt judge MBE according to its response to Mr. Berk's threats. MBE simply cannot be seen as condoning Mr. Berk's violence, extortion, and moral turpitude.

By contrast, this Court should accord little equitable consideration to Mr. Berk's claimed injuries because they are the consequence of his own misconduct. Dunkin' Donuts, Inc. v. Liu, No. 99-3344, 2000 U.S. Dist. LEXIS 18388, at *15 (E.D. Pa. Dec. 21, 2000) (holding that equities favor the franchisor where franchisee's claimed injuries are a result of its own breach of the franchise agreement). Moreover, Mr. Berk refused MBE's magnanimous offer to extend the termination deadline by two and one-half months, during which time Mr. Berk would sell the Stups franchise and thereby avoid the financial impact of franchise termination. (Higginson Decl. at ¶¶ 24-25 and Ex. B.) It is simply appalling that after sadistically threatening to visit destruction

upon UPS and its employees, Mr. Berk now complains of the personal financial consequences of his own detestable conduct and seeks to invoke the equities of this Court.

## CONCLUSION

For all of the foregoing reasons, MBE respectfully requests that this Court deny Stups' Motion for Temporary Restraining Order and grant MBE's Application for Temporary Restraining Order.

Dated: April 4, 2008

DLA PIPER US LLP

By /s/ Paul A. Reynolds
PAUL A. REYNOLDS
Attorneys for Plaintiff Mail Boxes Etc., Inc.
paul.reynolds@dlapiper.com