JOHN J. WALLER, JR. (State Bar No. 094449)
JAY STEIN (State Bar No. 141042)
Members of
FINESTONE & RICHTER,
A Professional Corporation
11601 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
Telephone: (310) 575-0800
Facsimile: (310) 575-0170
E-Mail: jwaller@frlawcorp.com
jstein@frlawcorp.com

Attorneys for Defendant Stuart Berk
and Defendant/Counter-Claimant Stups, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAIL BOXES ETC., INC.,**<br>**Plaintiff,**<br>**v.**<br>**STUPS, INC. and STUART BERK,**<br>**Defendants.** | Case No. 3:08-CV-00491-JAH-POR<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Date: April 11, 2008<br>Time: 9:30 a.m.<br>Judge: Hon. John A. Houston<br>Place: Courtroom 11 |
| **STUPS, INC.**<br>**Counter-Claimant,**<br>**v.**<br>**MAIL BOXES ETC., INC.,**<br>**Counter-Defendant.** | |

On April 11, 2008, this Court reviewed and ruled upon Plaintiff Mail Boxes Etc., Inc.'s ("MBE") Application for Temporary Restraining Order. In connection with that hearing, appearances were entered by Samuel B. Isaacson and Paul A. Reynolds for Plaintiff, and by Jay Stein for Defendants Stups, Inc. ("Stups") and Stuart Berk ("Berk") (collectively, "Defendants"). After careful consideration of the memoranda, declarations, relevant exhibits, and oral arguments of counsel at the hearing, and for the reasons set forth below, this Court converted MBE's Application for Temporary Restraining Order into an Application for Preliminary Injunction and **granted** MBE's Application for Preliminary Injunction.

## FINDINGS OF FACT

1. MBE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6060 Cornerstone Court West, San Diego, California 92121. MBE franchises numerous postal, packaging, business and communication retail service centers under the Mail Boxes Etc.® and The UPS Store® marks.

2. Defendant Stups is a New York corporation with its principal place of business in East Meadow, New York. Until these disputes arose, Stups was a franchisee of MBE.

3. Defendant Berk is a citizen and resident of the State of New York. Berk is the sole shareholder of Stups and was the principal operator of the Stups franchise center.

4. That Parties agree that, on or about July 25, 2005, MBE and Stups entered into a written franchise agreement, pursuant to which Defendants were granted a franchise to operate a The UPS Store® branded center, located at 1936 Hempstead Turnpike, East Meadow, New York for an initial ten-year term (the "Franchise Agreement").

5. Pursuant to the Franchise Agreement, MBE granted to Defendants a limited, non-exclusive license to use The UPS Store® trade name, trademarks, trade dress, service marks, logos, and symbols (the "Marks") during the term of the franchise.

6. The Franchise Agreement provides a number of grounds upon which MBE can terminate the Stups franchise without notice or opportunity to cure, including, under Section

12.4(k), if Stups "takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon MBE's network of Centers generally."

7. There is credible evidence before this Court that, as a result of Berk's conduct,, the franchise relationship between MBE and Stups has been burdened with business and service related issues. Specifically, Berk threatened to not process packages dropped off at his store by other UPS customers until the return or refund of his customers' lost packages, Berk stated that he does not care about other UPS customers, and threatened to put a hold on his UPS account.

8. The Parties dispute whether, and the precise date upon which, Berk threatened to "blow up" the UPS Customer Center in Nassau, New York ("Nassau Center"). The Parties agree, however, that, either on February 25 or February 26, 2008, Berk called Latasha Chatman, a customer service representative at the UPS Customer Service Center located in Newport News, Virginia, in order to locate a Stups customer's lost package. During that telephone call, Berk made the following statements: (a) that he had invested $300,000 in the Stups franchise and that he was not going to let his family "go down"; (b) demanded that UPS fire Jeff Malecki, a UPS Sales Representative; and (c) that he would "handle" Malecki as well. Based on Berk's failure to deny the foregoing statements in his Declarations, the Declaration of Latasha Chatman, and the voicemail evidence, the Court is persuaded that when Chatman informed Berk that UPS personnel were unable to locate his customer's lost package at the Nassau Center, Berk threatened to "blow up" the Nassau Center unless that package was located.

9. It is undisputed that after UPS security personnel contacted Berk regarding the foregoing, Berk called Robert Kaufman, the MBE District Consultant for his Region, and left him a voicemail message. In that voicemail message, Berk characterized the UPS security investigation as premised upon false accusations and then stated: "They want to play the game, I'm not playing anymore. I'm going my way and hopefully there won't be a major body count. Give me a call cause as it was said in First Blood, it's not over until I say it's over."

10. On March 14, 2008, MBE notified Defendants that it was terminating the Stups franchise pursuant to Section 12.4(k) of the Franchise Agreement. MBE subsequently terminated Stups' access to the MBE computer system, the point of sale and cash register system, the

shipping manifest system, the administrative system, and the use of UPS services including scheduled daily pick-ups and deliveries.

11. Notwithstanding MBE's issuance of its notice of termination of the Stups franchise, Defendants did not fully discontinue the operation of the Center and did not immediately remove all of the Marks.

12. On March 17, 2008, MBE filed its Verified Complaint asserting, *inter alia*, various Lanham Act and breach of franchise agreement claims against Defendants, and, on March 18, 2008, MBE filed its Application for Temporary Restraining Order seeking an order enjoining Defendants' unauthorized use of the Marks.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this action pursuant to both 28 U.S.C. §§ 1331, 1338(a), and 1338(b) as well as 28 U.S.C. § 1332. Venue properly lies in this Court pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2) as well as Section 20.1(b) of the Franchise Agreement.

2. The Ninth Circuit recognizes two tests for demonstrating entitlement to preliminary injunctive relief: the traditional test or an alternative sliding scale test. Southeast Alaska Conservation Council v. United States Army Corps of Engineers, 472 F.3d 1097, 1100 (9th Cir. 2006).

3. Under the traditional test, the moving party must show: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury … if preliminary relief is not granted; (3) a balance of hardships favoring the [moving party]; and (4) advancement of the public interest (in certain cases)." Southeast Alaska Conservation Council, 472 F.3d at 1100.

4. MBE is likely to succeed on the merits of its claims and, therefore, is entitled to preliminary injunctive relief under either the traditional or the alternative test.

5. MBE is likely to succeed in establishing that it properly terminated the Stups franchise pursuant to Section 12.4(k) of the Franchise Agreement and California Business and Professions Code Section 20021(d) because it is likely to succeed in establishing that Berk's

alleged conduct undermined both the operation and reputation of the Stups franchise center and the operations of the MBE franchise system as a whole.

6. The Court also finds that MBE is likely to succeed in establishing that Berk's alleged conduct and the tone of his interactions with MBE and UPS personnel undermined the entire franchise relationship.

7. The Court also finds that MBE is likely to succeed in establishing that Defendants' post-termination use of the Marks is unauthorized and violates Section 42(a) of the Lanham Act.

8. In the absence of preliminary injunctive relief, there is a probability that MBE will be irreparably harmed.

9. The balance of hardships tips sharply in MBE's favor. Because MBE is likely to succeed in establishing that there is a probability that Defendants' use of the Marks is unauthorized and is likely to confuse the consuming public, this Court will presume that the balance of hardships favors MBE.

10. Preliminary injunctive relief in favor of MBE will advance the public interest because when a terminated franchisee continues to use the franchisor's marks, the unauthorized use confuses and defrauds the public. Here, the issuance of a preliminary injunction would serve the public interest by ensuring that consumers are not misled.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. MBE's Application for Temporary Restraining Order, which has been converted by the Court to an Application for Preliminary Injunction, is **GRANTED.**

2. Defendants Stups and Berk are prohibited from using or displaying MBE's trademarks, service marks, logos, symbols, or trade dress in connection with advertising, distribution, or display for sale of any product or service.

3. Defendants Stups and Berk are prohibited from making any statement or representation, or performing any act, likely to lead members of the public to believe that

Defendants' store is in any manner, directly or indirectly, associated, affiliated, connected with, licensed, sponsored, authorized, or approved by MBE.

4. Defendants Stups and Berk are prohibited from taking any actions, directly or indirectly, that are likely to dilute the distinctive quality of UPS' registered marks, which are sublicensed to MBE, or from otherwise taking any actions that are likely to cause disparagement to MBE's business reputation. Without limiting the foregoing, Defendants are prohibited from making any disparaging remarks regarding MBE's termination of the Stups franchise or this Court's judgment with respect to the foregoing termination.

5. Defendants Stups and Berk are prohibited from taking any actions that would otherwise infringe upon MBE's trade name, trademarks, or service marks.

6. Defendants Stups and Berk are <u>not</u> prohibited from allowing their customers access to the individual mailboxes in Defendants' store.

7. Defendants Stups and Berk must file with the Court and serve upon MBE by April 28, 2008, a written report, under oath, setting forth the manner in which Defendants have complied with this Order.

8. Plaintiff MBE must post a bond in the amount of two hundred thousand dollars ($200,000) by April 28, 2008.

9. The Parties must preserve any evidence contained in laptops, computer hard drives, or any other electronic storage device that may be used to support the claims and defenses of any Party to this lawsuit.

Dated: April __, 2008

Signed:______________________________
Judge John A. Houston

**PROOF OF SERVICE**
**1013 CCP**

**STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES**

I am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 11601 Wilshire Boulevard, Suite 1900, Los Angeles, California 90025.

On April 21, 2008, I served true copies of the following document(s) described as **[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION** in this action to each party addressed as follows:

**SEE ATTACHED SERVICE LIST**

[ ] (BY MAIL) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] (BY OVERNIGHT DELIVERY) I caused said envelope(s) to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

[X] (BY ELECTRONIC DELIVERY) I caused said document(s) to be transmitted in PDF format via electronic mail delivery to the addressee(s) at the appropriate e-mail address(es).

Executed on April 21, 2008, at Los Angeles, California.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

____________________________
Cheryl Reynolds

**SERVICE LIST**

Paul A. Reynolds, Esq.
DLA Piper US, LLP
401 B Street
Suite 1700
San Diego, California 32101-4297
Facsimile: (619) 699-2701
E-Mail: paul.reynolds@dlapiper.com

Samuel B. Isaacson, Esq.
DLA Piper US, LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60610
E-Mail: samuel.isaacson@dlapiper.com