PAUL A. REYNOLDS (Bar No. 179656)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*Admitted Pro Hac Vice*)
PETER M. ELLIS (*Admitted Pro Hac Vice*)
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60610
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Plaintiff
**MAIL BOXES ETC., INC.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAIL BOXES ETC., INC.,**<br>**Plaintiff,**<br>v.<br>**STUPS, INC. and STUART BERK,**<br>**Defendants.** | Case No. 3:08-CV-00491-JAH-POR<br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STUPS INC. AND BERK'S MOTION TO DISMISS**<br>Date: May 19, 2008<br>Time: 2:30 p.m.<br>Judge: Hon. John A. Houston<br>Place: Courtroom 11<br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS


ARGUMENT .....2

I. STANDARD OF PROOF .....2

II. MBE'S COMPLAINT SATISFIES THE LIBERAL PLEADING REQUIREMENTS .....3

III. MBE WAS NOT FIRST REQUIRED TO MEDIATE CLAIMS RAISED IN THE COMPLAINT. .....7

IV. MBE'S BREACH OF NON-COMPETITION AGREEMENT CLAIM IS PROPERLY VENUED IN THIS COURT .....9

CONCLUSION .....12

# TABLE OF AUTHORITIES

## CASES

*B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C-07-02864, 2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) ........ 10-11

*Dunkin' Donuts Inc. v. Martinez*, No. 01-3589-CIV, 2003 U.S. Dist. LEXIS 2694 (S.D. Fla. Feb. 21, 2003) ........ 6

*Gilligan v. JamCo Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ........ 2

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ........ 9

*Mayweathers v. Terhune*, 136 F. Supp. 2d 1152 (E.D. Cal. 2001) ........ 4

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ........ 10

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) ........ 2

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ........ 2

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) ........ 2

*Talwar v. Creative Labs, Inc.*, No. CV 05-3375, 2006 U.S. Dist. LEXIS 96380 (C.D. Cal. Aug. 11, 2006) ........ 2

*Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046 (D. Minn. 2001) ........ 11

*United States v. Wiggins*, 146 Fed. Appx. 437 (11th Cir. 2005) ........ 6

*United States v. Whiffen*, 121 F.3d 18 (1st Cir. 1997) ........ 6

*Zamer v. DiLiddo*, No. 97-CV-32S, 1997 U.S. Dist. LEXIS 13887 (W.D.N.Y. Aug. 18, 1997) ........ 10

## STATUTE

CAL. BUS. & PROF. CODE § 20021 ........ 5

Plaintiff Mail Boxes Etc., Inc. ("MBE"), by and through its attorneys, DLA Piper US LLP, hereby submits the following Memorandum of Points and Authorities in Opposition to Defendant Stups, Inc. ("Stups") and Stuart Berk's (collectively "Defendants") Motion to Dismiss, and states as follows:

## ARGUMENT

### I. STANDARD OF PROOF

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are disfavored and rarely granted. Gilligan v. JamCo Development Corp., 108 F.3d 246, 249 (9th Cir. 1997). The Federal Rules impose only a minimal notice pleading burden upon plaintiffs at this preliminary stage of the litigation. Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). The question before the Court is not whether the plaintiff will ultimately prevail on its claims, but whether the plaintiff could prove any set of facts in support of its claims that would entitle it to relief. Talwar v. Creative Labs, Inc., No. CV 05-3375, 2006 U.S. Dist. LEXIS 96380, at **3-4, 9-10 (C.D. Cal. Aug. 11, 2006). In assessing this question, the Court should accept as true all of the facts alleged in the plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). Therefore, a defendant cannot prevail on a 12(b)(6) motion to dismiss unless it proves beyond doubt that the plaintiff is not entitled to relief. Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007). This standard cannot be met here under any circumstance because the Court has already determined that MBE is likely to succeed on the merits and has granted MBE's Motion for Temporary Restraining Order (converting it into a preliminary injunction).

## II. MBE's Complaint Satisfies The Liberal Pleading Requirements.

Defendants contend that this Court should dismiss MBE's Lanham Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because, in the absence of a "public act or disparaging statement to third parties" by Berk, MBE did not properly terminate the Stups franchise pursuant to Section 12.4(k) of the Franchise Agreement, which Defendants characterize as a "reputation clause." (Def.'s Mem. Of P. & A. In Supp. Of Mot'n to Dismiss Pl.'s Compl't ("Def.'s Br.") at p. 4.) This Court has already soundly rejected Defendants' argument on the Parties' cross-motions for preliminary injunction:

> The unilateral termination provision that is subject to this action states in part that if the Defendant takes any action that reflects materially and unfavorably upon the operations and reputation of the center at the location, or upon MBE's network of centers generally. ... The Defendant asserts that the provision is simply a reputation clause, and there was no public act to trigger the reputation of Plaintiff or the franchisee. Essentially Defendant argues that the series of frustrations between the Plaintiff and the Defendant was an in-house quarrel that was insufficient to trigger the unilateral termination clause.
>
> Plaintiff suggests that the Defendant's interpretation of the unilateral termination clause is, one, too narrow, and, two, fails to observe that the clause is written in the disjunctive. The Court agrees that the clause is written in the disjunctive. I've looked at the facts as presented in this regard to determine whether or not the facts support the triggering of the unilateral termination clause.
>
> The Court finds that ... there are ongoing business and service related issues between the Plaintiff and the Defendant. The Defendant threatened to hold packages dropped off by other UPS customers as ransom for the return of lost packages or refund for lost packages of his customers. His messages became more intense and more and more irate as time went on. ... The Defendant made a threat to blow up the Nassau facility. And after contact with Security Officers, the Defendant left another voice message which the Court has played over and over again. In this voice message, he doesn't explain his prior statements to the UPS or MBE employee. ... He went on to state that ... hopefully there won't be a major body count, and it's not over until I say it's over.
>
> These messages and discussions left UPS and Plaintiff's employees fearful for interacting with the Defendant. This Court agrees that the threats and the tone of the conversations left by the Defendant undermined the franchise relationship and jeopardized

> the integrity in the ongoing operations of the franchise system. The Court finds that these facts fall **squarely** within those contemplated by the unilateral termination provision. The facts presented **clearly** support the triggering of the unilateral termination provision. The Court further finds that the Plaintiff has shown **likelihood of success on the merits** … .

(Tr. of Apr. 11, 2008 Mot'n Hearing at pp. 49-51) (emphasis added). Because MBE's burden of proof on the cross-motions for preliminary injunction ("likelihood of success on the merits") was greater than its burden on this Motion ("any set of facts in support of its claims"), the Court's prior determination is dispositive of Defendants' Motion to Dismiss. See Mayweathers v. Terhune, 136 F. Supp. 2d 1152, 1153-54 (E.D. Cal. 2001).

Defendants nevertheless allege that Plaintiff's own allegations establish that MBE wrongfully terminated the franchisee agreement without notice or opportunity to cure. (Def.'s Br. at pp. 4-5). In this manner, Defendants attempt to prove wrongful termination of the Franchise Agreement from the allegations of the Complaint. While MBE disputes that the propriety of termination is an element of any of the causes of action it has asserted, the allegations of the Complaint, when construed in the light most favorable to MBE, only demonstrate that the termination was entirely proper. (Verif. Compl't at ¶¶ 32-38.)

Section 12.4(k) of the Franchise Agreement permits immediate termination of a franchise if the franchisee's conduct reflects in a materially unfavorable way upon the reputation and operation of the franchisee's business or the system generally:

> Franchisee shall be deemed to be in material default and MBE may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon delivery or attempted delivery to Franchisee of notice by MBE of the occurrence of any of the following events: … if Franchisee materially misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or MBE's rights therein, **takes any action that reflects materially and unfavorably upon the operation and reputation of the Center at the Location or upon MBE's network of Centers generally** … .

(Franchise Agreement at ¶ 12.4(k).) (emphasis added). Section 12.4(k) is consistent with and substantially identical to the California Franchise Relations Act ("CFRA") in this regard:

> If during the period in which the franchise is in effect, there occurs any of the following events which is relevant to the franchise, immediate notice of termination without an opportunity to cure, shall be deemed reasonable: ... (d) The franchisee makes any material representations relating to the acquisition of the franchise business **or the franchisee engages in conduct which reflects materially and unfavorably upon the operation and reputation of the franchise business or system.**

CAL. BUS. & PROF. CODE § 20021(d) (emphasis added).

Mr. Berk's violent threat to "blow up" a UPS customer center and "handle" a UPS employee reflected materially and unfavorably upon the operation and reputation of his franchise and MBE's franchise system as a whole in violation of both Section 12.4(k) of the Franchise Agreement and Section 20021(d) of the CFRA. On or about February 25, 2008, Mr. Berk called the UPS Customer Service Call Center in order to locate one of his customer's lost packages. (Verif. Compl't at ¶ 35.) When the customer service representative, Latasha Chatman, informed Mr. Berk that UPS personnel were unable to locate the package at the UPS Customer Center in Nassau, New York, Mr. Berk spiraled into an uncontrollable rage. (Id.) He threatened to "blow up" the UPS Customer Center unless his package was located. (Id.) Mr. Berk confirmed the seriousness of his threat by exclaiming that he was a very dangerous man. (Id.) And he further warned Ms. Chatman that he had invested $300,000 in the Stups franchise and that he was not going to let his family go down. (Id.) Finally, Mr. Berk demanded that a UPS Sales Representative, Jeff Malecki, be fired, and declared he would "handle" him as well. (Id.)

Mr. Berk's violent threats warranted immediate termination of the Franchise Agreement, without notice or opportunity to cure, pursuant to both the Franchise Agreement and the CFRA, because it "reflect[ed] materially and unfavorably upon the operation and reputation of the

Center at the Location" and "upon MBE's network of Centers generally." Franchise Agreement at ¶ 12.4(k); accord. CAL. BUS. & PROF. CODE § 20021(d). Berk's abhorrent conduct "undermine[d] the entire franchise relationship," "which is based on good faith and trust" and "seriously jeopardize[d] ... the essential integrity of the franchise system." See Dunkin' Donuts Inc. v. Martinez, No. 01-3589-CIV, 2003 U.S. Dist. LEXIS 2694, at *31 (S.D. Fla. Feb. 21, 2003) (holding that franchisee's violation of tax law was a sufficient basis for termination of the franchise agreement).[1]

Defendants contend that Mr. Berk's terroristic threats did not violate Section 12.4(k) of the Franchise Agreement because they were not published to a third party. (Def.'s Br. at p. 4.) Mr. Berk apparently believes that he can make terroristic threats with impunity so long as those threats remain "internal MBE communications." (Def.'s Br. at p. 3.) In making this argument, Defendants conflate MBE and UPS. MBE is the franchisor of "Mail Boxes Etc." and "The UPS Store" branded franchise centers. MBE's parent, UPS, is an authorized third-party shipping vendor of MBE franchisees. Thus, when Mr. Berk, in a telephone call with Latasha Chatman, who herself is a third party employed by APAC Customer Service Inc., yet another third party, threatened to "blow up" a UPS facility and "handle" a UPS employee, he issued a threat to a third

---

[1] Martinez *a fortiori* supports MBE's position because Berk committed substantially more serious crimes than the franchisee in that case. Berk's threat of violence constituted felony criminal conduct in violation of 18 U.S.C. § 844(e) and 18 U.S.C. §§ 875(b), (c), and (d). See United States v. Wiggins, 146 Fed. Appx. 437 (11th Cir. 2005) (affirming conviction under Section 844(e) for defendant's use of his cell phone to communicate a bomb threat to his employer); United States v. Whiffen, 121 F.3d 18 (1st Cir. 1997) (affirming conviction under Section 875 for defendant's phone calls in which he threatened to make "the building go boom" and to "blow up their building" unless the victims ceased their debt collection efforts).

party. And were MBE required to await widespread publication of Mr. Berk's bomb threat before terminating the Stups franchise, MBE would "be subject to even greater criticism and potential harm for knowingly ignoring, and thereby seeming to have condoned" Mr. Berk's despicable conduct. See Martinez, 2003 U.S. Dist. LEXIS 2694 at *32. In any event, this Court has already found that the conduct alleged, as substantiated by sworn affidavits, falls "squarely within [that] contemplated by the unilateral termination provision" and "clearly support[s] the triggering of the unilateral termination provision." (Tr. of Apr. 11, 2008 Mot'n Hearing at p. 51.)

## III. MBE WAS NOT REQUIRED TO FIRST MEDIATE CLAIMS RAISED IN THE COMPLAINT.

Defendants seek dismissal of MBE's state common law trademark and breach of Franchise Agreement claims (Counts IV through XI of the Complaint) for failure to first submit those claims to mediation by the American Arbitration Association ("AAA"). (Def.'s Br. at pp. 5-6.) Section 20.2 of the Franchise Agreement defines the mediation obligations of the Parties:

> (a) Subject to the limitation provided in the last sentence of this Section 20.2(a), **and subject to 20.2(b)**, before either party may initiate suit or action against the other, the parties pledge to attempt first to resolve the controversy or claim arising out of or relating to the Franchise Agreement ("Dispute") pursuant to mediation conducted in accordance with the Commercial Mediation Rules of the American Arbitration Association, unless the parties agree on alternative rules and a mediator within 15 days after either party first gives notice of such Dispute (the "Mediation Notice"). Mediation shall be conducted at Global Headquarters. The fees and expenses of the mediator shall be shared equally by the parties. The mediator shall be disqualified as a witness, expert or counsel for any party with respect to the Dispute and any related matter. Mediation is a compromise negotiation and shall constitute privileged communications under California and other Applicable Laws. The entire mediation process shall be confidential and the conduct, statements, promises, offers, views and opinions of the mediator and the parties shall not be discoverable or admissible in any legal proceeding for any purpose; provided, however that evidence that is otherwise discoverable or admissible shall not be excluded from discovery or admission as a result of its use in the mediation. Mediation shall be deemed completed 30 days after the date of the Mediation Notice unless extended by mutual consent of the parties.

> (b) MBE shall **not** be required to attempt first to mediate a controversy or claim against Franchisees through mediation as set forth in Section 20.2(a) if such claim or controversy **concerns** an allegation or allegations by MBE that Franchisee has violated (or threatens to violate, or posses an imminent risk of violating) any of MBE's federally protected intellectual property rights in the Marks or in the System, in which case MBE shall reserve the right to immediately seek injunctive relief within the courts of the United States of America located within the Southern District of California.

(Franchise Agreement at ¶ 20.2) (emphasis added). It is apparent from the face of the Franchise Agreement that Section 20.2(b) creates a broad exception to Section 20.2(a)'s mandatory mediation requirement for any claim or controversy that merely "**concerns** an allegation or allegations by MBE that Franchisee has violated (or threatens to violate, or poses an imminent risk of violating) any of MBE's federally protected intellectual property rights in the Marks or in the System." (Franchise Agreement at ¶ 20.2(b)) (emphasis added).

The Section 20.2(b) exception is **not** limited to MBE's Lanham Act claims, but encompasses all of the claims in MBE's Verified Complaint. Defendants seek to neatly compartmentalize the facts and causes of action to suggest that MBE's state law claims are entirely separate from its federal Lanham Act claims. In reality, even a cursory review of the Verified Complaint demonstrates that all of MBE's claims, both state and federal, arise from a common nucleus of operative facts concerning Berk's misconduct, MBE's resulting termination of the Stups franchise, and Defendants' continued unauthorized use of MBE's Marks. Indeed, MBE expressly incorporated its Lanham Act allegations as part of its state common law trademark and contract claims in recognition of the fact that the latter claims simply provide an additional remedy for Defendants' Lanham Act violations. These state law claims ultimately redress Defendants' misuse of the marks and likely confusion to the public that will result therefrom. Accordingly, pursuant to Section 20.2(b) of the Franchise Agreement, MBE was not

required "to attempt first to mediate" any of its claims against Defendants and instead was permitted "to immediately seek injunctive relief," as it did.

## IV. MBE'S BREACH OF NON-COMPETITION AGREEMENT CLAIM IS PROPERLY VENUED IN THIS COURT.

The Franchise Agreement and the Non-Competition and Non-Solicitation Agreement ("Non-Competition Agreement" or "Non-Compete"), which is incorporated into the Franchise Agreement as Exhibit D, contain different forum selection provisions. The Franchise Agreement provides that:

> Exclusive venue and jurisdiction of any suit arising hereunder shall lie within the courts of the State of California located in San Diego or within the courts of the United States of America located within the Southern District of California.

(Franchise Agreement at ¶ 20.1(b).) While, the Non-Competition Agreement provides that:

> Exclusive jurisdiction of any suit arising under this Agreement shall lie within the federal or state courts located within the State where the Center for the Franchise Agreement corresponding to this Agreement is located.

(NCNSA at ¶ 10.) In determining which of the foregoing provisions to apply, the Court should consider the well established principle of interpretation that individual provisions of a contract should be read in the context of the contract as a whole and given a reasonable interpretation. Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999).

In arguing that the claim for breach of the Non-Compete (which is part of Count X of the Complaint) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) on the basis of the Non-Compete's forum selection clause, Defendants ignore the forum selection clause in the Franchise Agreement itself and espouse an unreasonable interpretation of the Franchise Agreement as a whole. (Def.'s Br. at pp. 6-7.) Defendants contend that MBE's Lanham Act, state common law trademark, and breach of Franchise Agreement claims should be heard by this Court, but that MBE's breach of Non-Compete claim should be heard by a New York court.

Defendants' interpretation of these forum selection provisions would require MBE to litigate nearly all of its claims against Defendants before this Court, while also prosecuting a separate, parallel complaint in New York alleging a single count of breach of Non-Compete, which claim arises from the very same facts as MBE's claims in this action and is subject to the very same defenses (*i.e.*, wrongful termination) which this Court has and will continue to adjudicate, thereby risking inconsistent judgments.

MBE, on the other hand, contends that this Court should adopt an approach that accords primacy to one forum selection clause over the other depending on the nature of the complaint at issue. See Zamer v. DiLiddo, No. 97-CV-32S, 1997 U.S. Dist. LEXIS 13887, at *7 (W.D.N.Y. Aug. 18, 1997) (When "there are two conflicting forum selection clauses at issue," "courts have looked to the complaint to determine which contract is the one document which logically connects all the defendants to the plaintiffs.") Where, as here, the Complaint primarily concerns claims arising out of the Franchise Agreement (*i.e.*, Lanham Act, state common law tort, and breach of Franchise Agreement), this Court should apply the Franchise Agreement's forum selection clause. On the other hand, where a complaint primarily concerns breach of the Non-Compete, the Court should apply the Non-Compete's forum selection clause. Such an approach is not only consistent with this Court's right to exercise its discretion in adjudicating venue disputes and well-established principles of contract interpretation, but would also promote the efficient and consistent adjudication of claims.

Indeed, courts will not enforce a forum selection clause that is "unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (omitting internal quotations). Requiring MBE to litigate its Non-Compete claim in New York court while proceeding simultaneously in California "would be inefficient for both judicial and the parties resources and unreasonable under the circumstances." B&O Mfg., Inc. v. Home Depot U.S.A.,

Inc., No. C-07-02864 JSW, 2007 U.S. Dist. LEXIS 83998, at *8-9 (N.D. Cal. Nov. 1, 2007) (quoting M/S Bremen, 407 U.S. at 10) (denying a motion to transfer venue despite conflicting forum selection clauses in governing contractual agreements because "if the court were to enforce both [forum selection clauses], the parties would be required to litigate the claims in this action in two different forums on opposite coasts.").

MBE's Lanham Act, state common law trademark, and breach of Franchise Agreement claims and MBE's breach of Non-Compete claim "are so intertwined that the resolution of one party's claims will necessarily impact on the resolution of the other's." Ace Novelty Co., Inc. v. Vijuk Equipment, Inc., No. 90 C 3116, 1991 U.S. Dist. LEXIS 10713, at *20 (N.D. Ill. July 30, 1991). The factual bases for the respective claims are identical, and therefore, the California and New York courts would ultimately be presented with the same factual record. As a result, litigation of the Lanham Act, state common law trademark, and breach of Franchise Agreement claims in California and the Non-Compete claim in New York would be a waste of not only the Parties' resources, but also more importantly, a drain on the valuable resources of the California and New York courts, respectively. Such a colossal waste of resources would be patently unreasonable pursuant to Bremen and its progeny. See B&O Mfg., 2007 U.S. Dist. LEXIS 83998 at *8-9. Furthermore, litigation in two separate fora may result in preclusion of one party's claims or conflicting judgments and therefore violates the tenets established by the Bremen Court. Id. (finding enforcement of forum selection clause "unreasonable and possibly unjust" because enforcement would potentially result in claim preclusion or conflicting judgments and would be a waste of judicial resources); see also Taylor Inv. Corp. v. Weil, 169 F. Supp. 2d 1046 (D. Minn. 2001) (same).

Finally, but for Defendants' refusal to cease utilization of MBE's marks following lawful termination of the franchise, MBE would have filed suit in New York to enforce its rights

enumerated in the Non-Competition Agreement. Instead, as a direct result of Defendants' continuing unlawful use of its marks, MBE was contractually obligated to bring suit before this Court in the Southern District of California. Defendants now request that this Court reward their unlawful behavior, effectively placing them in a position to challenge this Court's granting of MBE's Preliminary Injunction without filing the appropriate appeal.[2] As such, not only would dismissal of MBE's Non-Compete claim waste precious judicial resources, but it would also effectively reward Defendants' unlawful conduct which necessitated litigation in this Court in the first instance.

## CONCLUSION

For all of the foregoing reasons, MBE respectfully requests that this Court deny Defendants' Motion to Dismiss.

Dated: April 28, 2008

DLA PIPER US LLP

By /s/ Paul A. Reynolds
PAUL A. REYNOLDS
Attorneys for Plaintiff Mail Boxes Etc., Inc.
paul.reynolds@dlapiper.com

[2] If Defendants ultimately file suit in New York prior to resolution of this action, MBE will seek an injunction of the action pursuant to 28 U.S.C. § 1651, which provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."