PAUL A. REYNOLDS (Bar No. 179656)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*Admitted Pro Hac Vice*)
PETER M. ELLIS (*Admitted Pro Hac Vice*)
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1263
Tel. 312.368-4000
Fax: 312.236-7516

Attorney for Plaintiff
**MAIL BOXES ETC., INC.**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MAIL BOXES ETC., INC., and UNITED PARCEL SERVICE OF AMERICA, INC.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STUPS, INC. and STUART BERK,**<br><br>**Defendants.** | CV NO. 3:08-CV-00491-JAH-POR<br><br>**AMENDED VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT, INJUNCTIVE, AND OTHER RELIEF**<br><br>Judge: Hon. John A. Houston |

Plaintiffs Mail Boxes, Etc., Inc. ("MBE") and United Parcel Service of America, Inc. ("UPS") (collectively, the "plaintiffs"), by their attorneys, DLA Piper US LLP, as and for their Verified Complaint for trademark infringement, unfair competition and breach of contract, and for injunctive and other relief, against defendants Stups, Inc. ("Stups") and Stuart Berk ("Berk") (collectively, "defendants"), state as follows:

**INTRODUCTION**

1. This is an action for entry of a temporary restraining order, preliminary and permanent injunctive relief to enjoin defendants' unlawful misuse of certain proprietary MBE and

UPS names and marks and breach of their contractual post-termination obligations. Until recently, defendant Stups was an MBE franchisee pursuant to a written franchise agreement granting it a limited license to use MBE's proprietary names and marks, including its federally-registered trademarks, in connection with the operation of an authorized Mail Boxes Etc.® center in East Meadow, New York. The center operated under "The UPS Store®" name. Defendant Berk personally guaranteed Stups' obligations under the Franchise Agreement. Stups' franchise agreement was terminated on March 14, 2008. Notwithstanding the termination of the franchise agreement, defendants have failed to comply with their post-termination obligations under the franchise agreement and a non-compete agreement, including their obligations to cease and desist from any and all use of plaintiffs' names and marks, to return all confidential and proprietary information to MBE, and not to compete with MBE for a period of 2 years in Stups' former franchise territory or solicit business away from MBE in any way. Following the termination, Stups has continued to hold itself out to the public in telephone listing services as "The UPS Store®." As a result of defendants' actions, plaintiffs have been and, unless the injunctive relief sought herein issues, shall continue to be irreparably harmed by defendants' misconduct.

**PARTIES**

2. Plaintiff MBE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6060 Cornerstone Court West, San Diego, California 92121. MBE is a wholly-owned subsidiary of UPS. MBE is the world's largest franchisor of independently owned and operated postal, packaging, business and communication retail service centers, under the Mail Boxes Etc.® and The UPS Store® marks, with more than 800,000 mailbox holders in the United States and thousands of locations worldwide, offering mail and parcel receiving, packaging, and shipping services and providing small businesses with a wide range of products and services in this District, across the United States and throughout the world.

3. Plaintiff UPS is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 Glenlake Parkway NE, Atlanta, Georgia 30328. UPS is the largest express carrier and largest package delivery business in the world, and

provides shipping services for documents and packages in this District, across the United States and throughout the world. As an MBE franchisee, Stups maintained a carrier agreement directly with UPS for carrier services to and from his franchise location. UPS is the owner of the marks at issue in this case and licenses those marks to MBE.

4. Upon information and belief, Stuart Berk is a citizen and resident of the State of New York

5. Upon information and belief, defendant Stups, Inc. is a New York Corporation with its principal place of business in East Meadow, New York.

**JURISDICTION AND VENUE**

6. The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that this is a civil action between citizens of different States and wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because MBE resides in this judicial district, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and the parties have agreed to exclusive venue in this judicial district for litigation of disputes under their franchise agreement.

**MBE'S FRANCHISED BUSINESS**

8. MBE was founded in 1980 and has continuously conducted its business involving the franchising of a standard, unique and uniform system for conducting business known as Mail Boxes Etc.® Centers, throughout the United States. Throughout its existence, MBE has offered and provided services including: mailbox services with 24 hour access; copy services; binding and laminating services; specialty paper services; fax services; postal services; parcel shipping;

freight shipping; packaging services; sale of shipping, packaging, mailing supplies and office supplies; printing services; notary services; passport photograph services; computer time rental; online services; among other services, all identified and promoted to the general public under the trademark, service marks, and trade names MAIL BOXES ETC.® and MBE MAIL BOXES ETC., and more recently going forward, The UPS Store®.

9. UPS is the owner of, *inter alia*, the following trademark and service mark registrations issued by the United States Patent and Trademark Office for the following trademarks and service marks, which have not been canceled, are now and have been valid at all times pertinent, and are in full force and effect (collectively referred to herein as the "Marks"):

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 78/818,815 | TUPSS | Principal | Pending | 35,39 |
| 2,884,954 | THE UPS STORE | Principal | Sept. 14, 2004 | 9, 35, 38, 39 |
| 76/442,507 | UPS STORE | Principal | Pending | 9 |
| 76/491,153 | UPS STORE | Principal | Pending | 35, 39 |
| 78/818,815 | TUPSS | Principal | Pending | 36 |
| 2,978,624 | UPS & Stylized Shield Device (b/w) | Principal | July 26, 2005 | 36 |
| 2,978,625 | UPS & Stylized Shield Device (color) | Principal | July 26, 2005 | 39 |
| 2,867,999 | UPS & Stylized Shield Device (b/w) | Principal | July 27, 2005 | 39 |
| 2,868,000 | UPS & Stylized Shield Device (color) | Principal | July 27, 2004 | 9, 16, 22, 35, 38, 42 |
| 2,973,108 | UPS & Stylized Shield Device (b/w) | Principal | July 19, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,981,794 | UPS & Stylized Shield Device (color) | Principal | August 2, 2005 | 9, 16, 25, 35, 38, 42 |

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 2,973,599 | UPS & Stylized Shield Device (color) | Principal | July 19, 2005 | 35, 36, 41 |
| 2,965,392 | UPS & Stylized Shield Device (b/w) | Principal | July 5, 2005 | 35, 36, 41 |
| 78/441,655 | UPS & Stylized Shield Device (b/w) | Principal | October 17, 2006 | 24, 28 |

10. UPS' registration of the Marks with the United States Patent and Trademark Office grants them "incontestable" status under the Lanham Act, 15 U.S.C. §1065. UPS is the current owner of the Marks listed above and has licensed the use of those Marks through affiliates to MBE. UPS, through an affiliate, has granted MBE a license for the use of the Marks.

11. MBE has used the Marks in interstate commerce in connection with the promotion, sale and licensing of Mail Boxes Etc. and The UPS Store® Centers and the advertisement, promotion and sale of postal, business and communications services and related products offered by those Centers throughout the United States.

12. MBE used the Marks in the advertisement, promotion and sale of postal, business and communications services and related products offered by MBE and its authorized franchisees to identify and distinguish the goods and services offered and sold by the authorized franchisees from other similar and competitive business operations.

13. The advertisement, promotion and sale of postal, business and communications services and related products offered by MBE and its authorized franchisees under the Marks have met with widespread success and have established goodwill of inestimable value among consumers throughout the United States.

14. By virtue of their continuous and extensive use by UPS, MBE and their licensees, the Marks have developed a secondary meaning in connection with the advertisement, promotion and sale of postal, business and communications services and related products.

15. MBE franchisees are granted limited, conditional licenses to use and display the Marks and products and services which bear the Marks during the active term of their franchise agreement. Among other things, MBE requires that, while this license is active, franchisees take certain steps to protect the integrity of the Marks.

16. Upon termination of any franchise agreement, the franchisee must cease use of the Marks, as required by law and the terms of his franchise agreement.

17. MBE grants franchises to qualified persons to own and operate franchise centers at specific locations and licenses its authorized franchisees' use of its proprietary trade names, trademarks and service marks, logos, know-how and expertise in connection therewith within an exclusive territory designated in the franchise agreement.

18. MBE provides its franchisees with proprietary property, equipment and information, including its MBE operating manuals, for use exclusively in connection with the operation of a franchised Mail Boxes Etc.® or The UPS Store® Center.

19. MBE franchise Centers are operated with uniform format, signs, equipment, layout, systems, methods, procedures and designs which utilize a unique architectural design, offer uniform products, and utilize certain trademarks, service marks, trade dress and other commercial symbols, including "THE UPS STORE® name."

20. With thousands of the The UPS Store® franchisees nationwide, MBE is the predominant leader in this industry. Through its more than twenty years of experience, MBE has developed unique, proprietary business knowledge upon which the franchisee business model is specifically formulated. This information is shared with MBE's carefully selected franchisees through training and continuous business support, and provides the foundation upon which MBE franchisees successfully operate postal, business and communications centers in markets throughout the United States and abroad.

21. MBE's business formula is based on its proven system of location, reliability and convenience. Over time, substantial customer goodwill and brand awareness builds in association with each MBE Center selling MBE products and providing MBE services based primarily upon the specific location of that center.

22. The operation of a store substantially similar to the The UPS Store® branded franchise, using the same products, services and means of doing business, in surroundings that look in most aspects the same as an authorized MBE franchise, confuses the local customer base who will still associate the store as a licensed the "The UPS Store®" center. MBE's inability to ensure the maintenance of its high standards of service and quality of an independent store risks irreparably harming and diluting its brand, image and goodwill.

23. In addition, operation of such a store makes it difficult from a practical standpoint for MBE to locate a new franchise operation for that territory.

**STUPS' FRANCHISE AGREEMENT**

24. On or about July 25, 2005, MBE and Stups entered into a written franchise agreement, pursuant to which Defendants were granted a franchise to operate a The UPS Store® branded center ("Center 5603"), located at 1936 Hempstead Turnpike, East Meadow, New York, for an initial ten-year term (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

25. On or about July 6, 2005, Berk executed a Continuing Personal Guarantee for Center 5603 by which he personally guaranteed the performance of Stups' obligations as franchisee under the Agreement. A true and correct copy of the Continuing Personal Guarantee is attached hereto as Exhibit B.

26. On or about July 25, 2005, Berk executed a Non-Competition and Non-Solicitation Agreement for Center 5603, pursuant to which he agreed, upon termination of the Agreement, for a period of two years, he would not, *inter alia*, "own, maintain, engage in, be associated with. . . any business which is the same or competitive with, or substantially similar to any MBE Center . . . within what was formerly the protected franchise territory granted under" the Agreement. A true and correct copy of the Non-Competition and Non-Solicitation Agreement for Center 5603 is attached hereto as Exhibit C.

27. The Non-Competition and Non-Solicitation Agreement, also requires that, during the two year period immediately following the termination of the Agreement, Berk would not

"divert or attempt to divert any business or customer of any Center to any competitor, or do anything injurious or prejudicial to the goodwill associated with MBE's proprietary Marks or MBE's System.

28. Pursuant to the Agreement, MBE provided Defendants with a variety of services and training developed through MBE's efforts and experience, which were intended to teach franchisees how to establish and operate a successful business and to further the overall interests of the franchise system.

29. Although the Agreement allowed Stups to use the Marks during its term, MBE reserved wide-ranging control over their use. The license to use the Marks contained the following conditions:

a. MBE reserved the right to control the uses of the Marks by the Defendants;

b. The Marks could not be used in the name of the legal entity formed by Defendants to operate the franchise;

c. Stups acknowledged the validity of the Marks and acknowledged that the Marks are the property of MBE; and

d. Stups agreed not to infringe upon, harm or contest MBE's rights to the Marks in any way.

(Agreement ¶ 6)

30. Stups also agreed that the goodwill arising from the use of the Marks belonged to MBE and would revert back to MBE in the event the Agreement were terminated for any reason. In addition, Stups agreed that, upon termination of the Agreement, it would change its business name and delete therefrom any reference to the Marks. (Agreement ¶¶ 6.1; 14.1)

31. In exchange for this training, know-how, use of the Marks and continuing operational assistance, Stups agreed to pay a continuing monthly royalty fee "in an amount equal to 5% of [earnings subject to royalty or STR], payable" within 14 days after the end of each month. (Agreement ¶¶ 5.1(c) and 5.2(a))

32. In addition, Stups agreed to pay a local "marketing fee in an amount equal to 1% of STR, payable" within 14 days after the end of each month. (Agreement ¶¶ 5.1(d) and 5.2(a))

33. Stups also agreed to pay a "national media fee in an amount equal to 2.5% of STR, payable" within 14 days after the end of each month. (Agreement ¶¶ 5.1(e) and 5.2(a))

34. In addition to the royalty and marketing fees, Stups agreed to pay promptly when due all "amounts due on account of purchases of goods, supplies or services relating to the MBE Center at the Location." (Agreement ¶ 5.4)

35. The Agreement requires Stups to operate the Center in compliance with the current standards and specifications set forth in MBE's Operations Manual, as modified from time to time. (Agreement ¶ 7.1c.)

36. In addition to these provisions, Stups agreed that, upon termination, MBE would be allowed, at its option, to purchase the tangible assets of the franchised location "at a purchase price equal to such assets' appraised fair market value." (Agreement ¶ 14.6) And Stups agreed to "transfer and assign the business telephone number, fax number and business Internet e-mail address for Franchisee's MBE Center to MBE or its designee." (Agreement ¶ 14.1(e))

37. Also, upon termination of the Agreement, Stups agreed to immediately "[c]ease to operate the former Center at Franchisee's location, cease to use the System and Marks in any form, cease to hold itself out as a Franchisee of MBE, and Franchisee shall not use or identify in any business name any of the words "The UPS Store" or "UPS", or "Store" or "Mail" or "Boxes" or "Etc." or the combined letters "MBE" . . . [and] take such action as MBE may require to accomplish the foregoing." (Agreement ¶ 14.1.a.)

38. Stups further acknowledged and agreed that "termination of Franchisee's Agreement extinguishes all intangible franchise rights that were formerly held by Franchisee." (Agreement ¶ 14.7.)

39. Finally, Stups agreed that if MBE instituted legal action against the franchisee for breach of the Agreement, Stups would be responsible to pay MBE's reasonable attorneys' fees. (Agreement ¶ 20.5)

## STUPS' BREACH OF THE AGREEMENT

40. Beginning in early 2006, Berk, who ran day-to-day operations for Stups at the franchise location as Stups' owner, began to exhibit unacceptable, erratic behavior.

41. On numerous occasions, Berk regularly used abusive, intimidating language and profanity in communications with MBE and UPS personnel.

42. Sometime in or about September 2007, for example, Berk left the following menacing and tyrannical voice messages for MBE's District Consultant:

> I had a fucking claim with Crawford and now they want more details and more details for a $160 Foreman griddle. Fuck Crawford, fuck UPS, fuck MBE - all you scumbags want to do is steal my fucking money. Someone better handle this cause I'm not taking care of it - cause I'm serious. And today is Tuesday, it's 10 after 10:00. So all you assholes that are out there jerking off someone better be in touch with me cause I've fucking had it.
>
> * * *
>
> Bob, it's Stewart, I hope you and the rest of the crew is having a party down in New Jersey. If I have to make any more fucking calls to UPS and I don't have MBE here and UPS here. You know something? I'm gonna turn this to the fucking FedEx store because at least I have an honest answer from them and to help get support. I need people to call me, I need people here. I don't need people jerking off in New Jersey at some meetings that say "Oh, we're doing wonderful while everyone's going broke. You know Nero fiddled while Rome burned. Get somebody to come into my store and do this other bullshit work. I'm not fucking doing it anymore.

43. In early 2008, Berk's abusive, hostile tactics escalated to include threats of physical harm and property damage to MBE and UPS. On or about February 25, 2008, Berk, on behalf of Stups, called a customer service representative at the UPS Customer Service Center located in Newport News, Virginia. In that call, Berk complained about a lost package which he identified by its tracer number 1Z0064F2039383007. He expressed his extraordinary frustration that UPS had not committed sufficient resources to locate promptly the lost package and his dismay that the package was damaged when it was found. In his efforts to spur UPS to action, he

threatened that "he was going to blow up the UPS Customer Service Center and he [Berk] is a very dangerous man.....that UPS was messing with his family money[, and ] that ....he has invested $300,000 with UPS and he was not going to let his family go down."

44. On or about the same day, February 25, 2008, Berk left a series of harassing and overtly hostile voice messages for the MBE District Consultant assigned to his region. Excerpts of these transcribed voice mails are set forth below:

> Bob, it's now 12:00 o'clock and nobody knows where this fucking package is and I'm telling you as I'm speaking to you, all the drop offs are not leaving this store if I don't get this package back by 1:00 o'clock. I need it here. The guy's coming in to pick them all up. And I have I don't know how many packages and not one of them is leaving the store – not one drop off package is leaving this store if I don't get this package by 1:00 o'clock. And I think you know that I'm not kidding around, that I don't even give a fuck about their customers.
>
> * * *
>
> Bob, it's Stewart, it's now 3:07. Nobody knows where my package is. Nobody seems to care. And I want a refund for all 5 packages cause something so I can work it with my customer and do something for him because I just lost him. And I am not going to get out anymore drop-offs until I get me the money or my package, and I'm putting a hold on my account. They have one going out to Malecki and Diorio. Nobody seems to care – nobody wants to contact me. I'm gonna to do what I have to do because I'm not gonna to be stuck here with all my hard work and money and then get screwed. Could you reach out to somebody fine, if you can't, fine. But I have just taken a stand and that's my stand. Want to call? Call me back

45. The next day, on February 26, 2008, Berk left the following voicemail message for MBE's District Consultant.:

/////

/////

/////

/////

> Bob, I just got a call from UPS security and they're making statements of false accusations so now I know I'm dealing with thieves and liars and stupid morons. They want to play the game, I'm not playing it anymore. **I'm going my way and hopefully there won't be a major body count. Give me a call cause as it was said in First Blood, it's not over until I say it's over.**

46. In light of Berk's rage and terrorist threats to UPS to do physical and personal violence, MBE reported his statements to New York law enforcement and made a decision to terminate the Agreement.

47. On March 13, 2008, MBE hand-delivered through security personnel a Notice of Material Default and Termination of Franchise Agreement for the UPS Store Center #5603 to Mr. Berk (the "Notice of Termination"). A copy of the Notice of Termination is attached hereto as Exhibit D). In that letter, MBE notified Stups and Berk that the Agreement would be terminated effective March 14, 2008 at 5:00 PM EST, unless Stups chose to pursue a sale of his franchise upon certain conditions acceptable to MBE.

48. Stups declined the opportunity to pursue the sale of the Center on conditions acceptable to MBE as stated in the Notice of Termination.

49. Instead, Stups has continued to operate the Center as if it were an existing MBE franchisee while doing nothing whatsoever to comply with the post-termination covenants contained in the Agreement.

50. Defendants have breached the Agreement and Personal Guarantee in, among other ways, the following respects:

a. Continuing to operate as an unauthorized "The UPS Store®" center with the use of the Marks at the former franchise location;

b. Continuing to use MBE's substantial goodwill and know-how for the operation of his business;

c. Failing to return to MBE the latter's proprietary hardware, software, computer discs, trade secrets and other confidential information;

/////

d. Failing to assign to MBE the business telephone number, facsimile number and business internet e-mail address for the center;

e. Failing to disconnect his telephone numbers and internet address; and

f. Failing to implement the requirements contained in the MBE "De-Identification Checklist."

51. Furthermore, Berk's continued operation of the Center constitutes a breach of the plain provisions of the Non-Competition and Non-Solicitation Agreement.

52. In the Non-Competition and Non-Solicitation Agreement, Berk agreed as follows:

> Covenantor recognizes and agrees that the injury that MBE and certain of its franchisees will suffer in the event of Covenantor's breach of any covenant contained in this Agreement cannot be compensated by monetary damages alone, and Covenantor therefore agrees that in the event of a breach or threatened breach by Covenantor of this Agreement, MBE, in addition to and not in limitation of, any other rights, remedies, or damages available to MBE at law, in equity, under this Agreement or otherwise, shall be entitled to seek an injunction from any court of competent jurisdiction in order to prevent or restrain any such breach by Covenantor or by Covenantor's agents, representatives, partners, co-owners, or any and all other persons directly or indirectly acting for or with him/her.

(Non-Competition and Non-Solicitation Agreement, at ¶ 8)

53. Berk has continued to operate his former franchise in such a way as to confuse consumers into thinking that it is still a licensed, sponsored The UPS Store® Center so that Stups and Berk can continue to reap the goodwill, benefits and customer recognition of the Marks and MBE's proprietary business system.

54. Stups' continued use of the Marks in connection with the former franchised location has and continues to damage the Marks and plaintiffs' goodwill and reputation.

**COUNT I**

**(Lanham Act - Trademark Infringement)**

55. Plaintiffs repeat and re-allege ¶¶ 1 through 54 of the Amended Verified Complaint as and for this ¶ 55, as if fully set forth herein.

56. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks, and are likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

57. As a direct and proximate result of defendants' infringement, plaintiffs have been and are likely to be substantially injured in their businesses, including their goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

58. Plaintiffs have no adequate remedy at law because the Marks are unique and represent to the public plaintiffs' identities, reputation, and goodwill, such that damages alone cannot fully compensate plaintiffs for defendants' misconduct.

59. Unless enjoined by the Court, defendants will continue to use and infringe the Marks, to plaintiffs' irreparable injury. This threat of future injury to plaintiffs' business identities, goodwill, and reputation require injunctive relief to prevent defendants' continued use of the Marks, and to ameliorate and mitigate plaintiffs' injuries.

**COUNT II**

**(Lanham Act - Unfair Competition)**

60. Plaintiffs repeat and re-allege ¶¶ 1 through 59 of the Amended Verified Complaint as and for this ¶ 60, as if fully set forth herein.

61. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

62. As a direct and proximate result of defendants' infringement, plaintiffs have been and are likely to be substantially injured in their businesses, including their goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

63. Plaintiffs have no adequate remedy at law because the Marks are unique and represent to the public plaintiffs' identities, reputation, and goodwill, such that damages alone cannot fully compensate plaintiffs for defendants' misconduct.

64. Unless enjoined by the Court, defendants will continue to use and infringe the Marks, to plaintiffs' irreparable injury. This threat of future injury to plaintiffs' business identities, goodwill, and reputation require injunctive relief to prevent defendants' continued use of the Marks, and to ameliorate and mitigate plaintiffs' injuries.

**COUNT III**

**(Lanham Act – Anti-Dilution)**

65. Plaintiffs repeat and re-allege ¶¶ 1 through 64 of the Amended Verified Complaint as and for this ¶ 65, as if fully set forth herein.

66. The Marks are famous marks with distinctive quality, thereby qualifying the Marks for protection from dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

67. Defendants' unauthorized use of the Marks has and will continue to lessen the capacity of the famous and distinctive Marks to distinguish the goods and services allocated with them from those sold by others under the same name and brand.

68. By reason of defendants' ongoing and continuing misconduct, plaintiffs have suffered and, unless defendants' misconduct is enjoined, will continue to suffer irreparable harm for each day that defendants continue to infringe upon and dilute the Marks.

69. Plaintiffs have no adequate remedy at law because the harm they have suffered and will continue to suffer is difficult to quantify, such that damages alone cannot fully compensate them for the defendants' unlawful use of the Marks.

**COUNT IV**

**(Common Law Misappropriation)**

70. MBE repeats and re-alleges ¶¶ 1 through 69 of the Amended Verified Complaint as and for this ¶ 70, as if fully set forth herein.

71. MBE has made a substantial investment of time, effort and money in developing a system or business program ("System") for a postal, business and communications franchise. The combination of store layouts, products, color schemes, fee structures and services offered by Mail Boxes Etc. and The UPS Store® franchises, including mail boxes for rent, packing, copying, shipping and other services, is a unique protectible style of business.

72. Defendants have misappropriated MBE's System by using it to operate a postal, business and communications center after termination of the Agreement, at little or no cost to defendants and without MBE's authorization.

73. By reason of defendants' ongoing and continuing misconduct, MBE has suffered and, unless defendants' misconduct is enjoined, will continue to suffer irreparable harm. Defendants' actions in misappropriating MBE's System has injured and is continuing to injure MBE by diluting the value of the System, damaging MBE's reputation and the viability of the MBE franchise system.

74. MBE has no adequate remedy at law because the harm it has suffered and will continue to suffer is difficult to quantify, such that damages alone cannot fully compensate MBE for its loss.

**COUNT V**

**(Common Law Trademark Infringement)**

75. Plaintiffs repeat and re-allege ¶¶ 1 through 74 of the Amended Verified Complaint as and for this ¶ 75, as if fully set forth herein.

76. As has been stated more fully herein, plaintiffs have a valid, protectible interest in the Marks.

77. Defendants' unauthorized and intentional continued use of the Marks, after Stups' license was terminated, violates plaintiffs' protectible interest in the Marks and is likely to cause consumer confusion.

78. Unless enjoined, defendants will continue to infringe on the Marks by continuing to hold the Center out as an authorized "The UPS Store®" franchise.

79. By reason of defendants' ongoing and continuing misconduct, plaintiffs have suffered and, unless defendants' misconduct is enjoined, will continue to suffer irreparable harm for each day that defendants continue to infringe upon and dilute the Marks.

80. Plaintiffs have no adequate remedy at law because the harm they have suffered and will continue to suffer is difficult to quantify, such that damages alone cannot fully compensate them for the unlawful use of the Marks.

**COUNT VI**

**(Common Law Unfair Competition)**

81. Plaintiffs repeat and re-allege ¶¶ 1 through 80 of the Amended Verified Complaint as and for this ¶ 81, as if fully set forth herein.

82. As has been stated more fully herein, defendants have continued the use of the Marks in their business practices and in the operation of the identical business that formerly was The UPS Store® franchise.

83. Defendants' unauthorized continued use of the Marks following the termination of the Agreement violates plaintiffs' protectible interest in the Marks and is likely to cause consumer confusion.

84. Defendants' unlawful business practice of intentionally using the Marks, even though the Agreement and its license to use the Marks have terminated, is an effort to deceive the public, pass defendants' services off as those sponsored and sanctioned by MBE and usurp the goodwill and reputation associated with the Marks.

85. This passing off of services as those of a The UPS Store® center not only injures plaintiffs' goodwill, but also constitutes a means of unfair competition against plaintiffs and MBE's properly-sanctioned franchisees.

86. By reason of defendants' ongoing and continuing misconduct, plaintiffs have suffered and, unless defendants' misconduct is enjoined, will continue to suffer irreparable harm for each day that defendants continue to compete unfairly with plaintiffs.

87. Plaintiffs have no adequate remedy at law because the harm they have suffered and will continue to suffer is difficult to quantify, such that damages alone cannot fully compensate them for defendants' unfair competition.

**COUNT VII**

**(Breach Of Contract—Injunctive Relief)**

88. MBE repeats and re-alleges ¶¶ 1 through 87 of the Amended Verified Complaint as and for this ¶ 88, as if fully set forth herein.

89. Stups has also breached the post-termination obligations contained in the Agreement. Specifically, Stups has refused to (i) assign the telephone numbers, fax numbers and e-mail addresses for their former MBE Center to MBE's designee; (ii) return to MBE its proprietary equipment and all operating manuals and other confidential information and instructions provided to them; (iii) return all stationary and other materials and property bearing the MBE logos and Marks; and (iv) comply with their covenant not to compete.

90. Stups' failure to comply with the post-termination obligations constitutes a material breach of the Franchise Agreement.

91. MBE has fully performed all of its obligations under the Franchise Agreement.

92. MBE has no adequate legal remedy for Stups' breach of the Agreement because its damages, including harm to its goodwill, are difficult to quantify, and therefore monetary damages alone cannot adequately, completely and fully compensate MBE for the harm caused by Stups' misconduct.

93. Unless enjoined and ordered by the Court to perform their post-termination obligations under the Agreement, Stups' breach will continue while causing MBE to suffer irreparable harm.

**COUNT VIII**

**(Breach Of Contract—Damages)**

94. MBE repeats and re-alleges ¶¶ 1 through 93 of the Amended Verified Complaint as and for this ¶ 94, as if fully set forth herein.

95. Stups has materially breached the Agreement by failing to comply with its post-termination obligations.

96. As a direct and proximate result of Stups' breach of the Agreement, MBE has suffered damages.

97. MBE has fully performed all of its obligations under the Agreement.

/////

/////

/////

**COUNT IX**

**(Misappropriation of Trade Secrets)**

98. MBE repeats and re-alleges ¶¶ 1 through 97 of the Amended Verified Complaint as and for this ¶ 98, as if fully set forth herein.

99. MBE's confidential and proprietary operating procedures, and methods and techniques for establishing and operating a postal, packaging, business and communication business constitute trade secrets.

100. MBE's confidential and proprietary information is used in the business of operating business and communication centers under the "Mail Boxes Etc.®" or "The UPS Store®" name and gives MBE and MBE's franchisees an opportunity to obtain an advantage over competitors who do not know or use it.

101. MBE has used and currently uses reasonable efforts to guard and protect the secrecy of its confidential and proprietary information.

102. MBE's confidential and proprietary information was communicated to defendants in confidence for their use exclusively in connection with the operation of their The UPS Store® Center.

103. Defendants are using MBE's confidential and proprietary information without MBE's authorization.

104. Defendants' use of MBE's confidential and proprietary information constitutes a misappropriation of MBE's trade secrets.

105. Defendants' misappropriation of MBE's confidential and proprietary information is willful, malicious, and deliberate.

106. Unless enjoined by this Court, defendants will continue to use MBE's confidential and proprietary information.

107. By reason of defendants' misappropriation of MBE's confidential and proprietary information, MBE has suffered and, unless defendants' conduct is enjoined, will continue to suffer irreparable harm, including damage to goodwill and reputation.

108. MBE has no adequate remedy at law because the harm it has suffered and will continue to suffer is difficult to quantify, such that damages alone cannot fully compensate MBE for its loss.

109. Defendants have been unjustly enriched through their wrongful use of MBE's confidential and proprietary information.

**COUNT X**

**(Specific Performance – All Post Termination Covenants)**

110. MBE repeats and re-alleges ¶¶ 1 through 109 of the Amended Verified Complaint as and for this ¶ 110, as if fully set forth herein.

111. MBE fully performed its obligations under the Agreement and the Non-Competition and Non-Solicitation Agreement.

112. The Agreement contains certain post-termination provisions, including a provision that, on termination MBE would be allowed, at its option, to acquire "the tangible assets (equipment, décor, etc.) of [Stups'] Center at the location at a purchase price equal to such assets' appraised fair market value." (Agreement ¶ 14.6.)

113. In addition, Stups must immediately "transfer and assign the business telephone number, fax number and business internet e-mail address for Franchisee's Center to MBE or its designee." (Agreement ¶ 14.1.e.)

114. Pursuant to the Non-Competition and Non-Solicitation Agreement, Berk must, for a period of two years, not, *inter alia*, "own, maintain, engage in, be associated with … any business which is the same or competitive with, or substantially similar to any MBE center … within what was formerly the protected franchise territory granted under" the Agreement. (Non-Competition and Non-Solicitation Agreement ¶ 3(b)(iii).)

115. The Agreement has been terminated. Nonetheless, defendants are continuing to run a postal, business and communications center at the same location, as if they were still an MBE franchisee, using the Marks and System.

116. Defendants refuse to comply with the post-termination provisions of the Agreement and the Non-Competition and Non-Solicitation Agreement. In addition, if defendants

are enjoined from using the Marks and System, it is highly likely that they will operate an independent, competing postal, business and communications center.

117. MBE has no adequate remedy at law for defendants' refusal to comply with the post-termination provisions because the harm they will suffer is difficult to quantify, such that damages alone cannot fully compensate MBE for its loss.

118. Consequently, MBE is entitled to specific performance of all post-termination provisions contained in the Agreement and the Non-Competition and Non-Solicitation Agreement.

**COUNT XI**

**(Conversion)**

119. MBE repeats and re-alleges ¶¶ 1 through 118 of the Amended Verified Complaint as and for this ¶ 119 as if fully set forth herein.

120. MBE has an immediate right to possession of its proprietary Point of Sale system and other proprietary property, equipment and information, including MBE's operating manuals and materials bearing the "The UPS Store®" name and Marks.

121. Defendants have failed and refused to return this property, thereby depriving MBE of its right to possession.

122. Defendants actions are willful and without the consent of MBE.

**PRAYER FOR RELIEF**

**WHEREFORE**, MBE and UPS respectfully pray for the following relief against defendants:

A. A temporary restraining order, preliminary and permanent injunction, enjoining defendants, and each of their agents, servants and employees, and those persons in active concert or participation with them from:

1. using or displaying the Marks, or any other logos, symbols or trade dress affiliated with Plaintiffs, or either of them, in connection with advertising, distribution, or display for sale of any product or service;

2. making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that defendants' store is in any manner, directly or indirectly, associated, affiliated, connected with, licensed, sponsored, authorized or approved by Plaintiffs, or either of them;

3. taking any action, directly or indirectly in any form or manner whatsoever that is likely to dilute the distinctive quality of the famous registered Marks or otherwise taking any action likely to cause tarnishment or disparagement to Plaintiffs' business reputations;

4. otherwise infringing MBE or UPS' trade names, trademarks or service marks, or otherwise competing unfairly with them in any manner;

B. A temporary, preliminary and permanent injunction enjoining defendants, and each of their agents, servants and employees, and those persons in active concert or participation with them from using MBE's proprietary system or business program in running a postal, communications and business services center;

C. A preliminary and permanent injunction enjoining defendants, and each of their agents, servants and employees, and those persons in active concert or participation with them from:

1. maintaining possession of the premises in which the Center is located on or after the date on which MBE assumes responsibility for the operation of the Center;

2. for a period of two (2) years from the entry of the injunction, being associated, either directly or indirectly, by virtue of being an employee, proprietor, partner, stockholder, agent, principal, owner, part-owner, co-venturer, officer, director, manager, operator, financier, salesman, or other participant or through family relationships, with a competing business within what was formerly the protected franchise territory. A competing business shall be one that is generally engaged in and offers postal, communication and business services and products and related services and products;

3. for a period of two (2) years from the entry of the injunction, either directly or indirectly, by virtue of being an employee, proprietor, partner, stockholder, agent, principal, owner, part-owner, co-venturer, officer, director, manager, operator, financier, or other participant or through family relationships, soliciting the business or making contact with customers of a MAIL BOXES ETC.® or THE UPS STORE® Center for any competitive business purpose;

4. using any trade secrets of MBE directly or indirectly.

D. Preliminary and permanent injunctive relief ordering defendants to immediately:

1. assign the business telephone number, fax number and internet e-mail address for defendants' Center to MBE and to execute any documents which may be necessary or desirable to effect such transfer with the telephone company and domain name registrar; and

2. cease possession by returning to MBE's corporate headquarters, at defendants' cost, all tangible, confidential information and instructions delivered to defendants under the Agreement

E. An order requiring defendants to file with the Court and to serve upon Plaintiffs' counsel within ten (10) days after entry of any injunction, a written report, under oath, setting forth the manner in which they have complied with that injunction;

F. Injunctive relief enjoining defendants' actual or threatened misappropriation of MBE's trade secrets;

G. Alternatively, damages in the event the Court declines Plaintiffs' request for equitable relief;

H. Damages for breach of contractual obligations as to which Plaintiffs do not seek equitable relief, including unpaid royalties and exemplary damages;

I. An award of attorneys' fees and costs; and

J. Such other and further relief as the Court deems just and proper.

Dated: April 4, 2008

**DLA PIPER US LLP**

By /s/ Paul A. Reynolds
PAUL A. REYNOLDS
Attorney for Plaintiff
Mail Boxes Etc., Inc.

**VERIFICATION**

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

I, Don Higginson, declare:

That I am Senior Vice President of Franchise Relations for MAIL BOXES ETC., INC. a party to this action and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing Amended Verified Complaint and am informed and believe, and on that ground allege that the matters stated in the Complaint are true.

I declare under penalty of perjury that the above is true and correct.

Executed this 4 day of April, 2008, at SAN Diego

Don Higginson